EDWARDS, Judge.
These two consolidated personal injury actions arise from an accident which occurred in Assumption Parish on July 26, 1978, at the intersection of Louisiana Highways 1 and 70. A vehicle driven by Parker McLean ran a stop sign while traveling on La. 70 and collided with the vehicle being driven by Mary Ann Comeaux in which Melissa Coupel was a passenger. At the time of the accident, McLean was employed by Lee-Vac, Ltd. and was covered under a policy of insurance issued by Continental Insurance Co.
Louis and Mary Ann Comeaux brought suit against McLean, Lee-Vac, Ltd. and Continental to recover for her personal injuries, medical expenses and lost wages, as well as for his lost wages and travel expenses incurred. Alex Coupel brought suit on behalf of his minor child, Melissa, for her injuries and medical expenses.
Defendants did not contest liability, the only issue at the trial was the amount of recovery. The trial court awarded Mrs. Co-meaux $65,000.00 in general damages, $8,900.00 for her past and future loss of wages, and $6,293.69 in medical expenses. Mr. Comeaux was awarded $1,671.12 for incidental expenses and his lost wages attributable to his wife’s medical treatment. Alex Coupel was awarded $15,000.00 in general damages on behalf of his minor daughter, and $688.79 in expenses.
Defendants have appealed both judgments and plaintiffs have answered the appeals, seeking an increase in quantum. We affirm.
Defendants make four specifications of error:
“1. The Trial Court committed a manifest error in awarding Melissa Coupel $15,000 in general damages.
“2. The award of $65,000 in general damages to Mary Ann Comeaux constituted a clear abuse of the Trial Court’s discretion.
“3. The Trial Court committed a manifest error in permitting the testimony of Therese Alleman.
“4. The Trial Court was manifestly erroneous in its awards for past and future loss of income and for incidental expenses.”
The alleged error in allowing Therese Alleman’s testimony will be considered first. This witness’s testimony helped to establish Mrs. Comeaux’s claim for lost wages. Mrs. Alleman, an elementary school cafeteria manager, testified that she had offered Mary Ann Comeaux a job around the time of the accident.
Approximately one month prior to trial, appellees filed answers to interrogatories, *687 indicating the witnesses that they intended to call at trial. Therese Alleman’s name was not listed. When plaintiffs called Therese Alleman at trial, defendants objected. The trial court overruled defendants’ objection, but gave defense counsel the opportunity to move for a continuance in order to depose Mrs. Alleman to eliminate any surprise or prejudice. Defense counsel chose not to do so.
Defense counsel was given the opportunity to overcome any surprise or prejudice which may have resulted in the failure to include Mrs. Alleman’s name on the list of prospective witnesses. Having failed to do so, he may not now complain that the defendants were prejudiced by her testimony. We find no error in the trial court’s actions in this regard and we now turn our attention to defendants’ claim that the damages awarded to plaintiffs are excessive.
MARY ANN COMEAUX’S DAMAGES
Four doctors testified at trial concerning the multiple injuries suffered by Mrs. Comeaux. Dr. Charles Bolotte testified that he first saw Mrs. Comeaux in the emergency room of Assumption General Hospital on the day of the accident, July 26, 1978. At that time, she was complaining of severe acute pain in her jaw and facial area. He further testified that she had a small punctuate laceration to the area of the right cheek and that she was very tender to motion of her neck. Dr. Bolotte had x-rays taken and they revealed that Mrs. Comeaux had a fracture of the right mandible.
Dr. Bolotte next saw Mrs. Comeaux about two weeks after the accident. At that time she was complaining of headaches and neck pain and he diagnosed her as having a moderately severe cervical strain secondary to the automobile accident. Dr. Bolotte testified that he continued to treat Mrs. Comeaux for her neck problems along with Dr. John Loupe, an orthopedic surgeon. Plaintiff introduced the deposition of Dr. Loupe, who testified that it was his opinion that plaintiff had suffered a severe cervical strain. On January 15, 1980, Mrs. Comeaux told Dr. Bolotte that she was experiencing droopiness in the right eyelid and tearing of her right eye. Dr. Bolotte referred her to Dr. Howard Kisner, a plastic surgeon.
Dr. Tooley Towns, an oral surgeon, testified that he first saw Mrs. Comeaux on July 26,1978, at the referral of Dr. Bolotte. Dr. Towns testified that when he saw her in the emergency room, she had multiple abrasions and lacerations over her face and body along with a compound fracture of the right mandible and a depressed fracture of the right zygomatic arch. Dr. Towns also testified that Mrs. Comeaux sustained a displaced fracture of the tri-molar complex, or the entire cheekbone.
Dr. Towns testified as to the steps he took to correct Mrs. Comeaux’s injuries. He performed a closed reduction of the fractured mandible, which involved wiring her jaws shut. Additionally, Dr. Towns performed an open reduction of the zygo-ma, a surgical procedure which lasted approximately one hour and forty-five minutes. Dr. Towns testified that Mrs. Co-meaux’s jaws remained wired shut for six weeks. Additionally, Dr. Towns testified that Mrs. Comeaux suffered from paresthe-sia or numbness of the infraorbital nerve for several months as a result of these fractures.
Dr. Wendell Kisner, a plastic and reconstructive surgeon, testified that he saw Mrs. Comeaux about eighteen months after the accident. He treated her for the drooping or hooding effect of her right eyebrow and eyelid. In order to correct the abnormality, Dr. Kisner testified that he performed a blepharoplasty and eyebrow lift.
Dr. George Burke, a psychiatrist, testified that he first saw Mrs. Comeaux on January 28, 1980, and had seen her five times since then. She complained to him of personality change, insomnia, blurred vision, irritability and a fear that she was “losing control.” His opinion was that Mrs. Comeaux was suffering from a neurosis with depression and anxiety as the main features. Dr. Burke testified that her condition was di *688 rectly related to the accident and that she would need to continue seeing him for about a year.
Mrs. Comeaux testified at trial concerning the multiple injuries she received along with the mental and physical problems she experienced and continues to experience since the accident. In his reasons for judgment, the trial judge noted Mrs. Comeaux’s sincerity and concluded that the accident did cause her real emotional damages from which she had not yet completely recovered.
Louis Comeaux testified at trial, without contradiction, regarding the medical expenses for his wife incurred as a result of the accident. He was shown and identified numerous bills which he received from various doctors, hospitals and pharmacies for the treatment of his wife. In addition, Mr. Comeaux kept a record of all of his out-of-pocket expenses, including his loss of wages due to his wife’s accident and subsequent need for his attention and care.
DAMAGES OF MELISSA COUPEL
Melissa Coupel, age thirteen at the time of the accident, sustained severe lacerations to her head as well as lacerations to her face, left elbow, both forearms, left knee and upper and lower leg and a finger on her right hand. Dr. Charles Bolotte testified that as a result of the accident, Melissa sustained lacerations and bruises which caused her a great deal of pain, and distress and required nineteen sutures. Dr. Bolotte hospitalized Melissa overnight for observation. Dr. Bolotte saw Melissa several times after the accident and on January 30, 1980, he had to make an incision to remove glass fragments from her finger which had been causing her pain.
Melissa’s parents testified at trial. They testified that, as a result of her injuries, Melissa did not go out of the house to play for about a month after the accident. Melissa also developed a fear of riding in an automobile as a result of the accident and was given medication for her nerves by Dr. Bolotte. There was also testimony that Melissa had consulted a psychiatrist concerning her fear of riding in automobiles. Mr. Comeaux also testified as to the medical expenses and other incidental expenses which he incurred as a result of his daughter’s injuries.
Melissa testified at trial relative to the injuries which she sustained in the accident. She testified that for about a month, she “was hurting too bad” to go out and play. Additionally, Melissa testified about her fear of riding in automobiles.
PROPRIETY OF THE DAMAGE AWARDS
Before an appellate court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Reck v. Stevens, 373 So.2d 498 (La.1979). The record supports the award made to Mr. and Mrs. Comeaux. Although the award for Melissa Coupel may be arguably high, after a review of the record, we are unable to articulate sufficient reasons to find that the awards constitute a “clear abuse” of the trial court’s discretion. Reck v. Stevens, supra. See also Faulk v. Cagle Supply, Inc., 399 So.2d 1186 (La.App. 1st Cir. 1981); Walton v. William Wolf Baking Co., Inc., 396 So.2d 962 (La.App. 1st Cir. 1981), aff’d 406 So.2d 168 (La.1981). Furthermore, since the trial court’s awards are found to be adequate, we find no merit in plaintiffs’ answer to the appeal.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by defendants-appellants.
AFFIRMED.