412 So.2d 726 (1982)
Freddie CHARLES, Plaintiff-Appellant,
v.
Rives LAVERGNE, et al., Defendants-Appellees.
No. 8743.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1982.
Rehearing Denied April 29, 1982.
*727 Glenn J. Armentor, Lafayette, for plaintiff-appellant.
James P. Lambert of Voorhies & Labbe, Gachassin & Capretz, Nicholas Gachassin, Jr., Lafayette, for defendants-appellees.
Before DOMENGEAUX, SWIFT and LABORDE, JJ.
SWIFT, Judge.
This suit involves an accident which occurred when a tractor-trailer truck ran over an electrical cable stretched across the highway. The plaintiff, Freddie Charles, filed this action against the driver of the truck, Rives Lavergne, his employer, Moody Truck Lines, Inc., and the latter's insurer, Maryland Casualty Companies. From the trial court's judgment in favor of the defendants, the plaintiff has appealed.
On November 7, 1977, at approximately 8:30 o'clock in the morning two crews of Southwest Louisiana Electric Membership Corporation (Slemco) arrived near the intersection of Louisiana Highway 343 and Alcide Clark Road in Lafayette Parish. The posted speed limit for Highway 343 at this point is 55 miles per hour. Its surface is asphalt, charcoal grey in color. Vehicles traveling on the highway have the right-of-way at the intersection.
The crews' task was to move an electrical cable from an old utility pole to another pole approximately 40 feet further away from Highway 343. Each crew consisted of a supervisor and two workers. Normally, each crew had a supervisor and three workers.
Plaintiff's crew located their yellow, 16 ton crane-bucket truck on Highway 343 slightly south of the intersection. The police officer who investigated the accident and defendant Lavergne testified the truck was located on the shoulder of the highway. The employees of Slemco said their vehicle was parked partially in the northbound lane of the highway. The other Slemco truck was located on Alcide Clark Road west of the intersection. Each vehicle was *728 equipped with a four-way beacon lamp above the cab and alternating flasher signals on the front and rear. These were lighted when the accident occurred.
Several diamond-shaped "Men Working" signs with red flags attached were placed at all approaches to the intersection. One of these signs was located 10 to 20 feet south of the Slemco truck in the northbound lane of Highway 343. The preponderance of evidence is that a second sign was placed in this lane about 100 feet south of the truck.
A Slemco employee, Kerry Viator, had been designated as a flagman to slow the traffic on Highway 343 prior to the accident.
The plaintiff, a lineman, was on the new pole to which the cable was to be strung, attached thereto by his safety belt. The aluminum cable was approximately 3/8th of an inch in diameter. It was originally shiny silver in color, but was duller and darker due to age and weather. It had to be deadened and dropped to the ground and then spliced to a length of new cable in order to reach the other utility pole. The old cable was laid flat across Highway 343 without any curls or kinks. Shortly before the accident Kerry Viator discontinued flagging the vehicles and went to aid another employee in splicing the cable.
Rives Lavergne, driving a tractor-trailer truck in a northerly direction on Highway 343 with a 48,000 pound load of rice, entered the southbound lane and proceeded around the Slemco truck. The tires of his truck struck the cable, evidently causing it to bounce off the pavement and become entangled in the rear axle of the trailer. The cable was attached to the utility pole on which plaintiff was working and upon its becoming taut the pole was broken in two places. The pole and the plaintiff fell to the ground, allegedly causing injuries to the plaintiff's back, neck, leg and arm.
The trial court found that upon approaching the scene Lavergne was under a duty to slow down and to be attentive so as to avoid striking the workers. However, this duty did not encompass the particular risk of the cable becoming entangled in the axle of the truck and causing the pole to break and throw the plaintiff to the ground. Therefore, the defendant was not negligent.
The principal issue presented by this appeal is whether or not the conduct of the defendant constituted actionable negligence.
As this court said in Neathery v. State, Through its Department of Corrections, 395 So.2d 407, 409 (La.App. 3 Cir. 1981):
"Before a determination of liability can be made, we must first inquire as to whether any causal relationship exists between the harm to the plaintiff and the defendants' alleged negligent conduct. Thus, if the plaintiff can show that he probably would not have suffered the injury complained of but for the conduct of the defendants, he has carried his burden of proof relative to cause-in-fact." [Citations omitted.]
In the instant case there is no question that the accident would not have occurred but for the defendant, Rives Lavergne, driving his truck across the cable stretched across the road.
However, in addition to this finding of a causal relationship between the conduct of the defendant and the injuries suffered by plaintiff, it must be established that the conduct complained of constituted a breach of a legal duty imposed on the defendant to protect against the particular risk involved before the plaintiff can be permitted to recover damages for such conduct. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (La.1972); Neathery v. State, Through its Department of Corrections, supra; and Lear v. United States Fire Insurance Co., 392 So.2d 786 (La.App. 3 Cir. 1980).
According to Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976), in making this determination, the following inquiries must be made: (1) What, if any, duty was owed by the driver of the truck to the plaintiff? (2) Was there a breach of this duty? (3) Were the risk and harm *729 caused within the scope of protection afforded by the duty breached?
Under Louisiana law a motorist is charged with the duty of seeing that which may be observed reasonably under the circumstances. Follins v. Barrow, 354 So.2d 609 (La.App. 1 Cir. 1977), writ denied, 356 So.2d 434 (La.1978). But a motorist may assume that the thoroughfare ahead is free from unusual hazards and he is not charged with the duty of guarding against unusual, unexpected or all but invisible obstructions which he had no reason to anticipate he would encounter on the road. Danna v. Howard Griffin, Inc., 388 So.2d 446 (La. App. 2 Cir. 1980); Parker v. Continental Insurance Co., 341 So.2d 593 (La.App. 2 Cir. 1977); and Page v. Green, 306 So.2d 847 (La.App. 2 Cir. 1975).
In Page the court was confronted with an analogous factual situation. The plaintiff's vehicle collided with a winch cable which the defendant had stretched across the highway about 12 inches above the surface in an attempt to pull a vehicle from a ditch. The defendant's version of the facts was that his emergency flasher lights were pulsating on the sides and front of his vehicle and that he stepped to the middle of the road waving his hands in time to warn the plaintiff of the cable. The plaintiff denied the defendant came to the middle of the highway and contended that he was unable to see the cable until it was too late to stop. The court said that under the defendants' version a legal duty was imposed on the plaintiff to reduce his speed and to prepare to take action to avoid dangers that a reasonable person would anticipate under the circumstances. However, since the cable was an all but invisible hazard which the plaintiff had no reason to anticipate, the plaintiff was not under a legal duty to protect against the particular risk of striking it.
In the instant case the employees of Slemco did position two "Men Working" signs in the northbound lane south of the Slemco truck. They also had pulsating flashers and a four-way beacon lamp operating on their trucks. However, no one was flagging traffic when the accident happened. Considering these warnings, like the trial judge, we conclude that the truck driver was under a legal duty to reduce his speed and to take action to avoid dangers that a reasonable person would anticipate under the circumstances. Some examples of such dangers would be a worker entering the highway from behind the parked truck, striking the parked truck which was either partially in the northbound lane or on the shoulder and of colliding with any oncoming traffic. We must further inquire, however, whether there was a breach of a legal duty to avoid or protect against the particular risk and the harm involved in this case.
Lavergne testified that upon seeing the "Men Working" sign which was approximately 10 feet behind the parked truck he slowed down, changing from 12th gear to 9th gear. Seeing the men at the poles and no one by the utility truck on or near the roadway, he continued on in the southbound lane at an estimated speed of about 45 to 50 miles per hour and eventually reentered his right lane. The defendant said that he did not see the cable until he was on top of it and it was then too late to avoid striking it.
Donald Boudreaux, an employee of Slemco, testified that the defendant's truck was going fast and he did not observe it slowing down at the time of the accident. The other Slemco employees said they did not actually see the truck before or at the time of the accident, but the noise indicated it was moving fast.
The trial judge accepted Lavergne's testimony as being correct and we cannot say he was clearly wrong.
From our review of the record we do not believe that the risk and harm caused in this case were within the scope of the protection afforded by breach of any duty by the defendant. The particular risk involved was in striking the electrical cable stretched across the highway. This cable was only 3/8th of an inch in diameter. Originally silver in color, it was darker and duller due to age. It was laying flat on the charcoal gray asphalt road surface, and it is obvious *730 that in such place the cable was difficult to see. There was no warning given to the defendant to communicate this particular danger which caused the accident. We agree with the trial court that:
"There is no evidence presented that establishes that defendant could have reasonably anticipated a wire lying in the roadway, of which he was not made aware, and that would ultimately become entangled in the axle of his truck, thus causing the pole to which it was connected to snap and to throw the plaintiff to the ground. The defendant's duty to proceed slowly through the scene and to be attentive did not encompass the particular risk eventually causing plaintiff's injury."
For these reasons the judgment of the district court dismissing the plaintiff's suit is affirmed. All costs are to be paid by plaintiff-appellant.
AFFIRMED.
DOMENGEAUX, J., dissents and assigns reasons.
DOMENGEAUX, Judge, dissenting.
Applying any reasonable standard, I respectfully submit that the defendant Lavergne was guilty of negligence by traveling fifty miles per hour under the circumstances present and the scenario which he faced. He knew or should have known, and saw or should have seen the possibility of danger by virtue of the warnings which confronted him as he proceeded northward on this two-lane black-topped road. He was driving an eighteen-wheeler loaded to capacity with 48,000 lbs. of filled rice sacks placed on pallets and secured only by a tarpaulin. As defendant approached the work area he faced two bright yellow sixteen ton crane-bucket trucks, one near a utility pole west of the intersection and the other parked partially on the roadway under the pole to be moved. Both trucks were provided with police type yellow magnesium-filament beacon lamps above the cabs, and alternating flasher signals both front and rear. All signals were working. Additionally, there were two large "Men Working" signs, diamond in shape, orange and black in color, approximately four feet in height, each with two large red flags jutting out in a "V" shape from the sign. One of these was placed approximately fifteen feet behind the parked Slemco crane-bucket truck which was partially on the roadway, and another about 100 feet from the intersection. Additionally, the six Slemco employees were in their respective positions, including some of them at the base of the utility pole. Confronted with all of these warnings, Lavergne should have slowed down substantially to meet his responsibilities while driving this monstrous vehicle which weighed 86,000 lbs. loaded. It is evident that Lavergne, by his own testimony, was paying scant attention to the myriad warnings which confronted him. He very candidly admitted that he did not see any emergency flashing signals, saying, "I didn't pay no attention. I didn't see it." There is much testimony in the record that other vehicles which preceded Lavergne's, upon being confronted with the warnings, slowed down dramatically before entering the intersection and passed over the cable with caution. Two or three of these vehicles were eighteen wheelers.
I have little difficulty finding that Lavergne was negligent, and that his negligent speeding was a proximate cause of the entanglement of the cable in the undercarriage of the eighteen wheeler, which ultimately caused the pole upon which plaintiff was perched to topple over and injure plaintiff. (The issue of whether or not Slemco or any of its employees may have been negligent, is not before us.)
I respectfully suggest that the application of duty-risk analysis here is strained. I submit that the trial judge and my colleagues of the majority erred in concluding that the duty owed plaintiff did not encompass the risk presented in this factual situation. My confreres have placed undue emphasis on foreseeability and anticipation, in absolving Lavergne from liability here. The Louisiana Supreme Court in the case of Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972) stated:

*731 "Foreseeability is not always a reliable guide, and certainly it is not the only criterion for determining whether there is a duty-risk relationship. Just because a risk may foreseeably arise by reason of conduct, it is not necessarily within the scope of the duty owed because of that conduct. Neither are all risks excluded from the scope of duty simply because they are unforeseeable. The ease of association of the injury with the rule relied upon, however, is always a proper inquiry. Prosser, Law of Torts (3rd ed. 1964), 282 ff." (Footnotes deleted and emphasis added).
It seems to me that a rule of law which would impose a duty upon a driver to slow down and proceed with extreme caution when confronting the circumstances described above, encompasses the risk here encountered. I face no difficulty in associating plaintiff's injuries with the rule relied upon. It is quite apparent, at least in my eyes, that the defendant's duty to slow down and proceed cautiously existed not only to prevent motorists from striking workers, as the trial judge suggests, but it also existed to avoid any accident which could have reasonably been associated with the works going on in the area. I find it hard to rationalize that one should not anticipate the possibility of wires or cables on the highway when there are electrical crews on poles on both sides of the public road, especially when approaching vehicles are apprised of upcoming dangers by virtue of varying warning signs and signals.
Furthermore, to say that the cable on the highway was something not to be foreseen or anticipated, and thereby not encompassing the duty-risk ambit, is to give license to vehicle operators to completely disregard warning signals and speed excessively to their heart's content.
Under the totality of circumstances in this case, Lavergne breached his duty to plaintiff. The risk here was within his ambit of responsibility. The warnings in this case telegraphed a message to any vehicle operator, and especially to defendant Lavergne, to be on the lookout for any danger associated with the Slemco work, including the presence of the cable on the highway.
In view of the above, I would reverse the trial court, hold in favor of plaintiff against Lavergne, his employer and the liability insurer, and then proceed to a determination of plaintiff's damages.
I respectfully dissent.