LANIER, Judge.
This is a suit for damages in tort alleging a cyclist got the wheel of her bicycle caught in a defective grating on a public bridge, was thrown to the deck of the bridge and sustained injury. Made defendants were the Iberville Parish Police Jury (Parish) and the State of Louisiana, through the Department of Transportation and Development (DOTD). The Parish and its insurer, Hartford Accident and Indemnity Company (Hartford), answered and filed a third party demand against DOTD for indemnity or contribution, asserting the bridge was designed and constructed by DOTD and DOTD was liable for any defects in it. The cyclist compromised her *178 claims against the Parish and Hartford for $18,500 and dismissed them as parties defendant in the suit. DOTD filed a third party demand against the Parish and Hartford, asserting the Parish had the custody and garde of the bridge at the time of the accident, the Parish agreed to indemnify the State in the operation of the bridge and DOTD was entitled to indemnification or contribution. The trial court rendered judgment in favor of the cyclist against DOTD for $89,637.06 and dismissed both third party demands. DOTD took this de-volutive appeal.
FACTS
On May 5, 1984, at approximately 3:30 p.m., Peggy Granger Clement was riding her bicycle in a westerly direction on the Bayou Grosse Tete bridge in Iberville Parish, Louisiana, when the front tire of the bicycle fell in a gap between sections of the bridge gratings. This caused the bicycle to stop suddenly. Mrs. Clement was thrown over the bicycle’s handlebars. She landed on her face on the bridge surface and sustained injuries.
At the request of the Parish, the Bayou Grosse Tete bridge was designed by DOTD and built by it in 1968. The bridge connects Sidney Road on the east side of the bayou with Louisiana Highway 77 on the west side of the bayou. The plans for the bridge called for concrete approaches on each end with a middle span made of steel grate flooring welded in place. The steel grating was installed in four sections, running the length of the span. There were to be three one-inch gaps between the four lengthwise sections.
On or about August 15, 1968, the Parish received a copy of a letter from DOTD’s project engineer to DOTD’s district engineer, advising that all work on the bridge had been completed according to plans and specifications and that the bridge would be ready for final inspection on August 19, 1968. The Parish did not inspect the bridge. On October 15, 1968, the Parish enacted the following resolution:
RESOLUTION
WHEREAS, the Police Jury of the Parish of Iberville hereby solicit certain, extra ordinary (sic) construction and improvements by the Department of Highways of the State of Louisiana, which construction and improvements is (sic) not in conformity with the general and established standards of the Department of Highways of the State of Louisiana and that in order to secure construction and improvements by the Department of Highways of the State of Louisiana: NOW, THEREFORE, BE IT RESOLVED that the Police Jury of the Parish of Iberville, State of Louisiana, does hereby agree to be solely responsible for the management of traffic and maintenance upon the bridge and approaches designed as follows:
GROSSE TETE BRIDGE & APPROACHES (GROSSE TETE BRIDGE STATE PROJECT NO. 713-20-87, ASPHALT APPROACHES FURNISHED BY THE IBERVILLE PARISH POLICE JURY WHICH MEETS THEIR REQUIREMENTS.
and does hereby agree to hold harmless the Department of Highways of the State of Louisiana from any and all claims of whatever kind or nature which may arise or may have arisen as a result of the construction and improvements solicited hereby and does forever release and discharge the Department of Highways of the State of Louisiana from any such claim as may have arisen or may hereafter arise or be asserted as a result of such construction.
The Parish has not received any complaints about the gratings on the bridge, and the gratings have not been removed or modified since the bridge was built.
LIABILITY OF DOTD

(Assignment of Error Number 1)

DOTD contends the trial court committed error in finding it liable because (1) the Parish was solely responsible for the bridge pursuant to its resolution; (2) it was not foreseeable that a cyclist would fall in a gap in the bridge; (3) Mrs. Clement had *179 the burden of showing the bridge was not constructed pursuant to the design standards in effect in 1968, and she failed to do so; (4) DOTD had no duty to reconstruct the bridge to modern standards; and (5) the gaps in the bridge did not constitute unreasonable risks of harm. Mrs. Clement asserts the ruling of the trial court is correct because (1) DOTD, as the owner of the bridge, is strictly liable for her injuries pursuant to La.C.C. art. 2317; and (2) “even if the State was not the owner of the bridge, their construction of same renders them totally responsible from (sic) harm resulting from their negligence in performing that construction” because the gaps in the bridge were wider than the one inch specified in the bridge plans, and this deviation from the plans resulted in a dangerous condition for cyclists which caused her injury-

DOTD’s Liability Under La. C. C. Art. 2317

In Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141, 1143 (La.App. 1st Cir.), writ denied, 435 So.2d 429 (La.1983), appears the following:
The owner, or person having custody, of immovable property has a duty to keep such property in a reasonable safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence. ... This duty is the same under the strict liability theory of La.C.C. art. 2317 as under the negligent liability theory of La.C.C. art. 2315. ... The difference in proof between these theories of liability is that under La.C.C. art. 2315, it must be shown that the owner, or person in custody, either knew or should have known of the risk, whereas under La.C.C. art. 2317, a claimant is relieved of proving the defendant's scienter. ... Under either theory of liability, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the “custody” of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises (breach of the duty); and (3) that the defect in the property was a cause in fact of the resulting injury. In both negligent and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. ... Under either theory of liability, the court must decide if the risk which causes the injury is within the ambit of protection of the duty.
The parties herein did not request reasons for judgment pursuant to La.C.C.P. art. 1917, and the trial court did not give reasons for judgment. Thus, we do not know the evidentiary facts or the legal theory upon which the trial court judgment is based. In this posture, we are unable to give the usual deference attributed to decisions of triers of fact at the trial level. Bloxom v. Bloxom, 512 So.2d 839 (La.1987).
As indicated above, to recover under La.C.C. art. 2317, Mrs. Clement had the burden of proving that DOTD either owned the bridge or had the custody (garde) of the bridge. Our review of the record shows that the evidence on ownership is inconclusive, and, thus, Mrs. Clement (who had the burden of proof) has failed to prove it. Under the Parish’s resolution, it (and not DOTD) was “solely responsible for the management of traffic and maintenance upon the bridge”, and, accordingly, we must conclude that the Parish had the custody (garde) of the bridge. Ross v. La Coste de Monterville, 502 So.2d 1026 (La.1987). Mrs. Clement cannot prevail under this theory of recovery.

DOTD’s Liability for Negligent Construction

A person who negligently builds something is liable in tort under La.C.C. art. 2315 for whatever damages are caused by his negligent construction; the builder has a duty to third persons (as well as to parties with whom he contracts) to perform in a workmanlike manner free from defects attributable to either faulty materials or poor workmanship. Marine Insurance *180 Company v. Strecker, 234 La. 522, 100 So.2d 493 (1958); Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958); Cell-O-Mar, Inc. v. Gros, 479 So.2d 386 (La.App. 1st Cir.1985), writs denied, 481 So.2d 1332 and 1333 (La.1986); Oller v. Sharp Electric, Inc., 451 So.2d 1235 (La.App. 4th Cir.), writ denied, 457 So.2d 1194 (La.1984).
The Bayou Grosse Tete bridge is intended for local use to accommodate vehicle, pedestrian, bicycle and animal traffic. The bridge plans drawn up and followed by DOTD in the construction of the bridge called for a one inch gap between the grates. One inch spacers could have been used to assure compliance with this specification. Plaintiffs expert in civil engineering, Raoul Gonzales, measured the gap in the area where Mrs. Clement fell and found that the gap measured anywhere from an inch and one-half to an inch and three-quarters. Mrs. Clement’s bicycle tire measured an inch and one-half with her on it and an inch and one-quarter when she was off of it. Mrs. Clement’s accident would not have happened had the bridge been built according to plan.
DOTD failed to follow its own specifications when it constructed the gap in the bridge with a spacing of one and one-half inch to one and three-quarters inch. The extra width of the gap made it possible for a bicycle tire to lodge in it. Because the bridge was intended to accommodate bicycle traffic, this deviation from specifications created an unreasonable risk of injury (and is a defect) because a bicycle tire could lodge in the gap and cause an accident (just as it did in the instant case). This defect caused Mrs. Clement’s accident and injuries. The duty of DOTD to construct the bridge in accordance with plans and specifications which would ensure that bicycle riders could safely use the bridge includes within the ambit of its protection the requirement that the bridge not have gaps in which a bicycle could fall or become lodged. (Thus, it is foreseeable that, if gaps in a bridge are not according to plan and are made too wide, bicycles would fall or become lodged in them and cause accidents.)
Because DOTD breached its duty to properly construct the bridge in accordance with its plans to accommodate bicycle traffic, the fact that it had no duty to reconstruct the bridge to modern standards, under the rationale of Myers v. State Farm Mutual Automobile Insurance Company, 493 So.2d 1170 (La.1986), is irrelevant. The facts that DOTD had an indemnity agreement with the Parish and the Parish assumed responsibility for the bridge after construction was completed, do not bar Mrs. Clement from seeking damages from DOTD for the negligent construction of the bridge; as to Mrs. Clement, DOTD had a non-delegable duty to construct the bridge according to plan so it would be safe for bicycle traffic. Cf. Guillotte v. Department of Transportation and Development, 503 So.2d 618 (La.App. 4th Cir.1987); Robinson v. State, Department of Transportation and Development, 454 So.2d 257 (La.App. 1st Cir.), writ denied, 458 So.2d 122 (La.1984).
This assignment of error is without merit.
COMPARATIVE NEGLIGENCE

(Assignment of Error Number 2)

DOTD contends the trial court committed error by not finding that Mrs. Clement was comparatively negligent. DOTD asserts Mrs. Clement was familiar with the bridge because she crossed it many times with her bicycle, and she admitted she had seen the gaps in the gratings. DOTD argues that Mrs. Clement could have avoided the accident had she been attentive.
A bicyclist is subject to the same duties applicable to drivers of motor vehicles. La.R.S. 32:194. One of those duties is to keep a proper lookout at all times. Robertson v. Penn, 472 So.2d 927 (La.App. 1st Cir.), writ denied, 476 So.2d 353 (La.1985). Thus, a bicyclist has a duty to maintain a proper lookout for hazards; however, the bicyclist has a right to assume that the highway is reasonably safe for his use until such time as he knows, or should know, of an existing hazard. Cf. Schilling v. United States Fidelity & *181 Guaranty Company, 487 So.2d 127 (La.App. 1st Cir.), writ denied, 488 So.2d 1027 (La.1986); Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir.1983). A bicyclist is not charged with a duty of guarding against unusual, unexpected or all but invisible hazards which he had no reason to anticipate would be in the roadway. Cf. Charles v. Lavergne, 412 So.2d 726 (La.App. 3rd Cir.1982).
The defect which caused Mrs. Clement’s accident was a one-half inch to three-quarter inch widening of the gap between the grates on the bridge. This negligent widening of the gap was just barely enough to allow her bicycle tire to fall into the gap. Mrs. Clement gave the following testimony at the trial:
Q And, Mrs. Clement, every time that you crossed this bridge did you notice that there were these gaps in the gratings?
A Not consciously, not really.
Q Did you ever notice on (sic) any time that you crossed the bridge that there were gaps in the grating?
A I suppose I knew that they were there, but I wasn’t aware of it. It’s like when you see anything.
Q Mrs. Clement, are you a fairly cautious bicyclist?
A I would like to think that I am, yes.
Q And, if you notice a rut or a hole or something you don’t try to run right over it, do you?
A No.
Q You take evasive measures to avoid it?
A Yes.
When crossing the bridge, Mrs. Clement was required to direct her attention to motor vehicles and pertinent traffic controls, as well as to the roadway. In this factual posture, a distance on the surface of the roadway of one-half to three-quarters of an inch is not apparent or conspicuous. Failure to observe such a defect while riding a bicycle across a bridge is not comparative negligence.
This assignment of error is without merit.
INDEMNITY OR CONTRIBUTION

(Assignment of Error Number 3)

DOTD contends the trial court erred in failing to grant its third party demand against the Parish and Hartford. DOTD asserts “the State is not legally responsible for the bridge” because of the Parish’s resolution, “the hold harmless clause of the acceptance resolution acted to absolve the State from any further responsibility”, and, in the alternative, “should the State and Parish be held to be joint tortfeasors herein, the State should receive credit for the $18,500 paid plaintiff in settlement by the Parish and its insurer.”
In its resolution, the Parish agreed “to hold harmless ... [DOTD] ... from any and all claims of whatever kind or nature which may arise or may have arisen as a result of the construction and improvements ... and does forever release and discharge ... [DOTD] ... from any such claim as may have arisen or may hereafter arise or be asserted as a result of such construction.” (Emphasis added.)
The rules for interpreting a contract of indemnity are set forth, in pertinent part, in Soverign Insurance Company v. Texas Pipe Line Company, 488 So.2d 982, 983-986 (La.1986), as follows:
When a contract of indemnity makes no express provisions for indemnification against the consequences of the indemni-tee’s negligence, and an unequivocal intention to so indemnify cannot be found after interpreting each contractual provision in light of the whole contract and the general rules of contractual interpretation, the court will presume that the parties did not intend to hold the indem-nitee harmless from such liability.
[[Image here]]
The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity. ... Interpretation of a contract is the determination of the common intent of the parties. ... When the words of a contract are clear and explicit and lead to no *182 absurd consequences, no further interpretation may be made in search of the parties’ intent. ... Each provision in a contract must be interpreted in light of the other provision so that each is given the meaning suggested by the contract as a whole. ... Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include.
... When the parties intend a contract to have a general scope, but particularly describe a specific situation to eliminate doubt, the interpretation of the contract must not restrict its scope to that specific situation. ... The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect. ... Equity is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.
[[Image here]]
When there is doubt as to indemnification against an indemnitee’s own negligence liability, however, usage, custom or equity may not be used to interpret a contract expansively in favor of the in-demnitee. In such a case, if the provision is still in doubt after applying the general rules of construction and interpreting the provision in light of the contract as a whole, i.e., if the intention to indemnify against an indemnitee’s liability for his negligence is equivocal, this court has established a presumption that the parties did not intend to indemnify an indemnitee against losses resulting from his own negligent act.
[[Image here]]
The rule of presumption of Polozola v. Garlock, Inc. is derived from the principles of equity. To impose on a person an obligation to indemnify another against the indemnitee’s own negligence without the obligor’s unambiguous consent is contrary to the principles of equity. Because of the obligor’s lack of ability to evaluate, predict, or control the risk which may be created by the indemni-tee’s future conduct, enforcement of such a provision without clear evidence that the risk was bargained for and ac-. cepted may allow one to take unfair advantage of another and unjustly enrich himself at the other’s expense. ... Moreover, such an injustice may encourage antisocial acts and a relaxation of vigilance toward the rights of others by relieving the wrongdoer of liability for his conduct.
The DOTD-Parish indemnity contract resolution indicates that the Parish solicited the construction of the bridge by DOTD, the construction was “extra ordinary” (sic) because it was “not in conformity with the general and established standards” of DOTD and that the DOTD agreed to do the work if the Parish “agree[d] to be solely responsible for the management of traffic and maintenance upon the bridge and approaches” and gave DOTD the indemnity contract. DOTD utilized substandard plans at the Parish’s request. As previously indicated, DOTD negligently failed to follow its own substandard plans. The indemnity clause of the contract does not expressly provide that the Parish will indemnify DOTD for DOTD’s own negligence. Rather, it appears that the Parish agreed to indemnify DOTD from claims resulting from correctly following construction plans which were “not in conformity with the general and established standards” of DOTD. In this posture, we must presume the parties did not intend to hold DOTD harmless from liability for negligently failing to follow its own (substandard) plans.
DOTD is entitled to a pro rata reduction of the judgment against it if it can prove that the Parish was guilty of concurrent fault. Dusenbery v. McMoran Exploration Company, 458 So.2d 102 (La.1984); Raley v. Carter, 412 So.2d 1045 (La.1982). The Parish had a duty as the custodian of the bridge to keep it in a reasonably safe condition, and it had a duty to discover any unreasonably dangerous condition on the premises and either correct the condition or warn of its existence.
*183 The evidence shows that the Parish did not inspect the bridge when it was turned over to it by DOTD and made no inspection of the bridge during the sixteen year period between 1968 and 1984 (when the accident occurred). The negligence of DOTD caused the dangerous gap in the bridge to exist. The negligence of the Parish in failing to conduct a simple inspection allowed the gap to continue to exist until the date of the accident. The concurrent and equal fault of DOTD and the Parish caused Mrs. Clement’s injuries. DOTD is entitled to a 50% reduction of the award against it. Joseph v. Ford Motor Company, 509 So.2d 1 (La.1987).
This assignment of error has merit.
QUANTUM

(Assignment of Error Number k)

The State contends the trial court’s award of $89,637.06 was “grossly excessive.”
As a result of the May 5, 1984 accident, Mrs. Clement (who was 34 years old at the time) was taken to the emergency room at Our Lady of the Lake Hospital. Dr. Rivers P. Wall, Jr. diagnosed her as having lacerations on her lips and a horizontal fracture of the mandible, or lower jawbone, which damaged several teeth. Dr. Wall was unable to take X-rays of Mrs. Clement’s jaw because of equipment problems. Mrs. Clement was released the following day and referred to Dr. James Laville, her regular dentist, for X-rays. She was readmitted to the hospital on May 7, and Dr. Wall performed surgery to reduce the fracture and wire her jaws shut. She remained in the hospital for two more days. Two weeks later, the intermaxillary wires were removed, allowing her to open her mouth, but the circummandibular wire remained around her fractured lower jawbone. Mrs. Clement was unable to use her teeth normally for ninety days.
Dr. William C. Chisholm, a root canal specialist, testified seven teeth were deadened, and one knocked out completely, as a result of the accident. Mrs. Clement had six root canals, with a possible seventh in the future. Dr. Chisholm found Mrs. Clement’s prognosis was good and there was “an excellent chance she is going to retain the teeth.” Dr. Laville testified that Mrs. Clement’s teeth were good prior to the accident.
Mrs. Clement was also treated by Dr. J. Thomas Kilroy for severe pain in her neck and in the back of her head. He diagnosed her as having a cervical strain, which was completely well by December 24, 1984.
Mrs. Clement was referred by Dr. Laville to Dr. Glenn M. Kidder, a dentist specializing in the treatment of temporomandibular joint (TMJ) conditions. Dr. Kidder diagnosed her as having TMJ disfunction, primarily as a result of the bicycle accident. However, he stated that her prognosis was good and would improve with time.
. Mrs. Clement’s past medical expenses totaled $15,749.06. She testified that she will incur an estimated $5,000 in future medical expenses. Dr. Kidder found more treatment was necessary but gave no price for it. In addition, Mrs. Clement missed two weeks of work as a result of the accident. Although she was paid $855 for those two weeks, she had to use up her sick leave. She also stated that she experienced severe pain during the first couple of days following the accident and has not felt well since the accident.
The trial court did not itemize the elements of damage awarded. A lump sum judgment of damages is normally presumed to award all items of damage claimed, and the appellant’s burden of proving that the fact finder clearly abused its much discretion is more difficult than usual because the intention to award a specific amount for any particular item is not readily ascertainable. Each case must be determined on its own facts and circumstances, and we must examine each element of damage claimed to determine if there was an abuse of discretion. Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1st Cir.), writs denied, 433 So.2d 1056 and 1057 (La.1983).
After subtracting past and future medical expenses ($15,749 + $5,000), $68,888 remains of the total damage award. Since *184 Mrs. Clement testified that her pay for the two weeks was $855,[1] the remaining $68,-033 constitutes the general damage award for disability, pain and suffering, both past and future, and mental anguish. After thoroughly reviewing the record, we cannot say that the trial court’s award was a clear abuse of discretion.[2] Reck v. Stevens, 373 So.2d 498 (La.1979).
This assignment of error is without merit.
DECREE
For the foregoing reasons, the judgment of the trial court in favor of Mrs. Clement and against DOTD is amended to reduce it to the sum of $44,818.53, and, in all other respects, the judgment is affirmed. DOTD is cast for all costs of $1,163.45.
AMENDED and AFFIRMED.
SHORTESS, J., dissents in part with reasons.

. The record reflects that plaintiff was paid for the two weeks she missed from work but had to use her sick leave.
Where an injured party receives payment from a source involving loss of a benefit due him, such as the use of sick or annual leave, the tort-feasor is not entitled to a diminution of damages for lost earnings on account of such payments. Reeves v. Gulf States Utilities Co., 327 So.2d 671 (La.App. 1st Cir.), writs denied, 330 So.2d 309 and 311 (La.1976); Swann v. City-Parish, 492 So.2d 1225 (La.App. 1st Cir. 1986).

. For examples of similar damage awards, see Coupel v. McLean, 409 So.2d 685 (La.App. 1st Cir.1981); Garrison v. State, Department of Highways, 401 So.2d 528 (La.App. 2nd Cir.1981); Friedrichs v. State Farm Fire & Casualty Insurance Company, 496 So.2d 496 (La.App. 1st Cir. 1986); and Bock v. Burnham, 419 So.2d 6 (La.App. 4th Cir.1982).