637 So.2d 636 (1994)
Robert LUTZ, et al., Plaintiffs-Appellees,
v.
CITY OF SHREVEPORT, Defendant-Appellant.
No. 25801-CA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1994.
*638 Jerald Jones, City Atty., John M. Frazier, Asst. City Atty., Shreveport, for defendant-appellant.
Donald R. Miller, Shreveport, for plaintiffs-appellees.
Before SEXTON and VICTORY, JJ., and LOWE, J. Pro Tem.
VICTORY, Judge.
Defendant, the City of Shreveport (the "City"), appeals a trial court judgment which declared it liable for personal injuries sustained by David Lutz. We affirm.

FACTS
Just before 9:00 p.m., on June 18, 1989, ten-year-old David Lutz was riding his bicycle in the 9300 block of Blom Boulevard, Shreveport, Louisiana. His mother, Patricia Lutz, was following him in a pickup truck with the headlights lighted. As Lutz steered the bicycle toward his home, 9382 Blom Boulevard, the front wheel struck a hole in the road causing him to be thrown from the bicycle.
On September 11, 1989, Lutz's parents, Robert and Patricia Lutz, filed suit against the City on his behalf. They alleged that the City was strictly liable for injuries sustained as a result of the accident because the hole in the road constituted an unreasonably dangerous condition. Plaintiffs also claimed that Lutz's injuries were caused by the City's negligence. The issues of liability and quantum were bifurcated for trial.
After a two-day bench trial, the court found that Lutz's accident was caused by the hole in the roadway that was approximately 7 inches deep, and 16 inches in diameter. The trial court concluded that this hole constituted an unreasonably dangerous condition, rendering the roadway defective. The City was found to have had constructive knowledge of the defect, and a reasonable opportunity to repair it before the accident occurred. The trial court ruled that the City was strictly liable for the injuries sustained by David Lutz, as provided by LSA-C.C. Art. 2317 and LSA-R.S. 9:2800. No comparative negligence was assigned to Lutz.
The City appeals, claiming that the trial court erred by finding that: (1) the hole constituted an unreasonably dangerous condition; (2) the City had constructive knowledge of the hole, and a reasonable opportunity to repair it; and (3) David Lutz was partially at fault.

DISCUSSION
In their petition, plaintiffs predicated the City's liability on the theories of strict liability and negligence. LSA-C.C. Art. 2317; LSA-R.S. 9:2800; and LSA-C.C. Art. 2315.
The elements of proof that Lutz must satisfy to impose liability upon the City, based upon either negligence or strict liability, are essentially the same. Oster v. Department of Transportation and Development of Louisiana, 582 So.2d 1285, 1288 n. 4 (La.1991); Valet v. City of Hammond, 577 So.2d 155, 164 n. 10 (La.App. 1st Cir.1991); and Griffin v. City of New Orleans, 533 So.2d 1048 (La.App. 4th Cir.1988). Under either theory, Lutz must show that: (1) the City owned or had custody of the thing which caused the damage; (2) the thing was defective in that it created an unreasonable risk of harm to others; (3) the City had actual or constructive knowledge or notice of the defect prior to the accident, and failed to take corrective action within a reasonable time; and (4) causation. Valet, supra.
The first element, ownership or control, has been satisfied since the City admitted at trial that it had ownership or custody of the 9300 block of Blom Boulevard on the date of the accident. Likewise, the fourth element, causation, has been met since the parties do *639 not dispute the existence of the hole and the role that it played in causing the accident.

UNREASONABLE RISK OF HARM
With regard to the second element, the City argues that the trial court erred by finding that the hole presented an unreasonable risk of harm to others. We find no error.
The applicable legal standards are well settled. The City has a duty to maintain its streets in a safe condition for use by the public. Carr v. City of Covington, 477 So.2d 1202, 1204 (La.App. 1st Cir.1985), writ denied, 481 So.2d 631 (La.1986). However, it is not liable for every defect or irregularity in a street, but only for the dangerous defect that creates an unreasonable risk of injury. McDade v. Town of Oak Grove, 545 So.2d 1276, 1278 (La.App.2d Cir.1989). To determine whether the defect complained of presented an unreasonable risk of harm, courts balance several factors, including the probability and gravity of the harm presented by the risk against the social utility of the thing involved. Durkee v. City of Shreveport, 587 So.2d 722, 726 (La.App.2d Cir.1991), writ denied, 590 So.2d 68 (La.1991). In each case, of course, the unreasonable character of the defect must be decided on the particular facts and circumstances presented. McDade, supra.
Patricia Lutz testified that she noticed the pothole on the evening of the accident when she went to her son's aid. She recalled inspecting it the day after the accident, and described the hole as "very deep." Mrs. Lutz estimated that the hole was between 14 to 16 inches in diameter, and 6.5 to 7 inches in depth.
The hole was located in the front of the mailbox for 9390 Blom Boulevard, and Robin Styles, who lived at that address at the time of the accident, testified that the hole was "very big" and "deep." She stated that the hole was bad enough to damage a low riding vehicle travelling at any degree of speed. In order to avoid hitting the hole while turning into her driveway, Styles testified she swerved wide into the other lane of traffic or would go around the block to approach her driveway from the other direction.
Verdy Jones, who resided at 9386 Blom Boulevard when the accident occurred, recalled inspecting the hole before it was repaired by the City following the accident. He estimated that the hole was about 6 or 7 inches deep.
Edward Gongre, a personal friend of the Lutzes who lived in the 9300 block of Blom Boulevard, inspected the hole the morning after the accident. He estimated that the hole was 15 to 18 inches in diameter, and 5.5 to 8 inches deep.
The record also contains the City's work order prepared when the hole was repaired. This document indicates that it took approximately one hour to complete the repairs, and that one-half of a ton of "hot mix" was used to fill the hole.
Based on this evidence and a photograph of the pothole taken shortly after the accident and before it was repaired, the trial court found that the hole was approximately 16 inches in diameter, and 7 inches deep, and that it was unreasonably dangerous. We find no manifest error in the trial court's conclusion. The evidence and testimony presented clearly provide a reasonable factual basis for the court's finding. The hole in question was quite large and was located in an area frequented by automobiles, bicyclists and pedestrians. Under these circumstances the likelihood of harm was great, especially in light of the fact that there are no sidewalks running parallel to Blom Boulevard.

CONSTRUCTIVE NOTICE
With regard to the third element, notice, the City argues that the trial court erred in finding that it had constructive notice of the hole before the accident, and that it failed to take corrective action within a reasonable time.
"Constructive notice" in negligence cases has been defined as "the fact that the defect or condition had existed for such a period of time it would have been discovered and repaired if the public body had exercised reasonable care." Bell v. Sewerage and Water Board of New Orleans, 235 So.2d 164 (La. App. 4th Cir.1970). In the context of strict liability, "constructive notice" means the existence *640 of facts which infer actual knowledge. LSA-R.S. 9:2800(C). However, since the enactment of LSA-R.S. 9:2800, in 1985, the definition of constructive notice as employed in negligence cases, has also been applied by the courts to evaluate notice in strict liability cases. See, e.g., Watts v. Tanqipahoa Parish Council, 576 So.2d 1063 (La.App. 1st Cir.1991), writ denied, 581 So.2d 690 (La. 1991); and LeBlanc v. City of New Orleans, 573 So.2d 1274, 1276 (La.App. 4th Cir.1991), writ denied, 575 So.2d 826 (La.1991). Thus, it is proper to consider both definitions when evaluating the constructive notice requirement for purposes of strict liability.
Several neighborhood residents testified to the historically poor condition of the block in question. Furthermore, Robin Styles, who lived at 9390 Blom Boulevard for four months prior to the accident, stated that the hole that Lutz hit near her mailbox was there when she moved into her home. John H. Reeves, who resided at 9395 Blom Boulevard since 1962, was also familiar with the hole that Lutz hit. He estimated that it had been there for about 4 to 6 weeks prior to the accident.
Several of the City's employees testified at trial. Michael Strong, superintendent of Solid Waste at the time of the accident, stated that all complaints about city streets and sidewalks were logged on paper and a work order requesting repair was prepared therefrom. Furthermore, it was City policy to have the supervisors of each of the City's districts or quadrants survey the streets every 30 days for problems. After examining a photograph of the hole that Lutz hit, Strong stated that if he had seen a hole of this nature he would have reported it to the streets department for repair. Although this practice was not mandated or specifically recognized as a formal City policy, Strong testified that this type of interdepartmental cooperation was common. According to Strong, City employees on most levels subscribed to the practice, including garbage truck drivers, sewerage and water employees (meter readers), policemen, firemen and parks and recreation employees.
Strong's testimony about this unwritten interdepartmental reporting procedure was corroborated by Ron Norwood, the City's superintendent of Streets and Drainage. Norwood stated that he had attended meetings between staff and supervisors wherein hazardous streets had been discussed and defects reported. Although Norwood testified that this practice was not City "policy," he admitted that it was good procedure.
Finally, Robert Lutz testified that the City provided many services to the area. He stated that the City picked up his garbage twice a week and provided water and sewerage. According to Lutz, he was billed for these services monthly, after City employees read the meter directly in front of his house. Lutz testified that City trucks also sprayed regularly for mosquitos, and travelled down the 9300 block of Blom Boulevard to do so.
Based upon the testimony of these witnesses, the trial court charged the City with constructive notice, finding that the hole hit by Lutz had been in existence for at least a period of 4 to 6 weeks, and that several City employees must have travelled the area during this time. We find no error. Under the circumstances, the City should have discovered and repaired the hole within the 4- to 6-week period, and it was proper for the trial court to charge the City with constructive notice. See, e.g. Watts, supra; and Jones v. Louisiana Department of Highways, 338 So.2d 338 (La.App. 3d Cir.1976).

COMPARATIVE NEGLIGENCE
The City argues that Lutz was comparatively negligent, and that any recovery should be reduced accordingly. Our review of this issue is governed by the manifest error rule since findings of the respective percentages of fault under LSA-C.C. Art. 2323 are factual in nature. Devereux v. Allstate Insurance Company, 557 So.2d 1091, 1095 (La.App.2d Cir.1990).
A bicyclist is subject to the same duties applicable to drivers of motor vehicles. LSA-R.S. 32:194; Crump v. Ritter, 583 So.2d 47, 50 (La.App.2d Cir.1991), writ denied, 588 So.2d 1113 (La.1991); Clement v. State of Louisiana, Through the Department of Transportation and Development, 528 So.2d 176, 180 (La.App. 1st Cir.1988), writ denied, 532 So.2d 157 (La.1988). One of those duties is to keep a proper lookout at all times. Thus, a bicyclist has a duty to maintain a proper lookout for hazards; however, the *641 bicyclist has a right to assume that the highway is reasonably safe for his use until such time as he knows, or should know, of an existing hazard. A bicyclist is not charged with a duty of guarding against unusual, unexpected or all but invisible hazards which he had no reason to anticipate would be in the roadway. Clement, supra (citations omitted).
Robert and Patricia Lutz testified that they were in the process of moving when the accident occurred. They intended to spend their first night in their new home on the evening of the accident. Because David Lutz was new to the neighborhood he was unfamiliar with the poor condition of the street. At the time of the fall, it was dark or almost dark, as shown by the fact that Mrs. Lutz had the pickup truck's headlights on while following her son home. Under these circumstances, the trial court was not clearly wrong in holding that the City failed to prove that David Lutz was partially at fault in causing the fall.

DECREE
For the reasons stated above, we affirm the trial court judgment. All costs of this court are to be borne by the City of Shreveport.
AFFIRMED.