SHORTESS, Judge.
Pamela Rodrigue (plaintiff) was injured on September 26,1984, when her husband’s pickup truck in which she was riding collided with a concrete base for a light pole in a parking lot owned by Firestone Tire & Rubber Company (Firestone) in Houma, Louisiana. She brought suit against Firestone, G.G. Marcel & Sons, Inc. (Marcel), lessee and operator of Firestone’s store, and State Farm Insurance Company (State Farm), her husband Ricky Rodrigue’s insurer. ■ Defendants filed cross claims and third party demands. Prior to trial, plaintiff settled with State Farm for $50,000.00, and a motion for summary judgment on behalf of State Farm dismissing Marcel’s cross claim and Firestone’s third party demand was granted. Firestone’s and Marcel’s cross claims against each other were dismissed following the trial on the merits because the trial court found that the sole cause of the collision was the fault of Ricky Rodrigue (Rodrigue). Plaintiff appealed, and Firestone and Marcel answered the appeal to protect themselves in the event fault apportionment was changed.
Plaintiff specifies as error, inter alia, the trial court’s failure to find liability on the part of Firestone and Marcel under LSA-C.C. art. 2315 and under LSA-C.C. art. 2317, and the trial court’s finding that Rodrigue’s fault was third party fault that operated to completely absolve Firestone and Marcel of liability. While asserting the correctness of the judgment below, Firestone argues that any liability assessed against it by this court arising from the accident is subject to the indemnification provision in Marcel’s lease agreement.
*479 . Prior to the accident, the Rodrigues had never been to the Firestone dealership in Houma. Rodrigue testified that he turned into the parking lot and attempted to park his pickup truck near the entrance to the tire display, but because there were no parking spaces, he pulled up to one of the “bay doors” in the service area. He then noticed a sign that read “DO NOT BLOCK DOORS,” and testified that he proceeded as follows:
Well, when I pulled to the bay door, I stopped momentarily before looking to back up. And when I looked in my rear-view mirror, 1 seen (sic) there was a parking space behind me. So I turned around and proceeded to park between two vehicles.
[[Image here]]
I proceeded to back up between the two parked cars and we just came to a dry stop. We hit something. .
In response to cross-examination, however, Rodrigue stated that he could not recall whether he used the side view mirrors. The pickup truck was equipped with a “camper” which allowed visibility through a large rear window. Plaintiffs testimony on cross-examination is similar to that of her husband with regard to his use of the rear window: “Like when he pulled up there, what he did, he-turned around, he looked, and .then he backed up, because he saw a parking spot.” Plaintiff also testified Rodrigue looked in the side view mirror on the driver (left) side, but that she could not say whether he used the (right) side view mirror.
Backing an automobile is considered a dangerous maneuver, and the law imposes a high duty of care upon the driver attempting it. See LSA-R.S. 32:281; Turner v. New Orleans Public Service, 476 So.2d 800, 802 (La.1985). Turner involved a pedestrian struck in a warehouse by a truck in the process of backing into a parking space. The court in Turner bluntly stated: “[bjacking a truck without knowing whether it can safely be done is grossly negligent.” 476 So.2d at 802.
 While our facts do not involve a truck-pedestrian collision, the significance of the maxim is not altogether lost. The limitation of driver visibility while backing an automobile is a reason for the increased standard of care. Rodrigue, while backing his truck,, failed to see the obstruction. The truck was equipped with mirrors. On direct examination he testified that he used the mirrors, but on cross-examination he testified that he could not recall. Plaintiff testified that her husband used the mirror on the left (driver) side. There is also some discrepancy in the testimony as to whether there were cars parked on both sides of the obstructed parking space. While plaintiff and her husband testified that there were cars on both sides, Michael Marcel, manager of the store, testified that there were no customers inside the store at the time of the áccident and that there were no other cars in the parking lot. The trial court made no specific findings with regard to these questions of fact. We must assume that the trial court resolved these issues in favor of the prevailing party. See Kuswa & Associates v. Thibaut Construction Co., 463 So.2d 1264, 1266 (La.1985).
Rodrigue failed to see what he should have seen and was negligent pursuant to LSA-C.C. art. 2315. The trial court was correct in finding him guilty of some fault but for the following reasons it committed legal error in'finding Rodrigue guilty of all fault.
Rodrigue testified that he never saw the two and one-half to three-foot-high concrete light base. The light base was directly opposite, by approximately three car lengths, a customer entrance to the store. In September 1983 an automobile struck the light pole, requiring its removal. A year later, at the time of Rodrigue’s collision, only the concrete base remained.
Prior to the 1983 accident, Marcel placed four tires horizontally around the concrete base, and then painted the tires and the base red. Michael Marcel testified that the light pole was situated in what otherwise would have been an additional parking space in a row of such spaces that ran parallel to the store. He also testified that the tires were placed there to prevent damage to customers’ automobile doors; and *480 that he had struck the concrete base on one occasion, as had a customer, prior to the removal of the light pole. Marcel testified that he did not remove the concrete base after the 1983 accident because he did not know whether Firestone intended to replace the damaged light pole. Marcel testified that he had discussed removal of the light pole with Firestone prior to the 1983 accident because he would rather have had the use of the extra parking place. After the 1983 accident, when only the concrete base remained, Marcel testified that he had “repeated” discussions with Firestone representatives about its removal. Marcel testified that Firestone representatives visited the store on a weekly basis and were well aware of the condition of the light pole soon after the 1983 collision. Marcel removed the concrete base after Rodrigue’s collision with it because the electrical wiring had been damaged, resulting in a “short” that prevented the operation of the parking lot lighting.
In Sullivan v. Gulf States Utilities, 382 So.2d 184 (La.App. 1st Cir.), writ denied, 384 So.2d 447 (La.1980), a security guard for Ethyl Corporation collided with a concrete light pole foundation in the Ethyl parking lot. The parking lot was under construction, and there were several such concrete foundations without light poles attached. The plaintiff was well aware of the construction and had passed one such concrete foundation prior to the collision. Unlike the facts at bar, the collision in Sullivan occurred at night. Also unlike our facts, however, the plaintiff in Sullivan was aware of the presence of these obstacles and had seen one just prior to his collision.
The court in Sullivan upheld the trial court’s determination that the defendants were negligent under LSA-C.C. art. 2315 for their failure to adequately warn, by painting, marking, or barricading, of the existence of the obstructions. The court went on to find defendants liable under LSA-C.C. art. 2317, determining that the foundations were “defective,” creating an unreasonable risk of injury because they were not “painted, marked, or barricaded.” 382 So.2d at 188. The accident in Sullivan occurred prior to Louisiana’s adoption of comparative fault, however, and plaintiff's contributory negligence barred his recovery. It should be noted, though, that in upholding the trial court’s determination of contributory negligence, the court observed the following:
[Pjlaintiff had been a security guard with Ethyl for many years and was well aware of all the conditions that existed in the parking lot at the time of the accident. Plaintiff knew that the piers, including the one that he hit, had been constructed in the parking lot more than two months prior to the accident. Secondly, plaintiff, when proceeding towards the car wash and when confronted with the oncoming headlights, had sufficient time at the slow and reasonable speed at which he was proceeding to detect and avoid the pier which he knew was somewhere in the path ahead. Plaintiff simply failed to keep a proper lookout in light of all the circumstances surrounding this accident. Were he a casual visitor to the Ethyl plant the result might be different. But he was not, and the result is not.
382 So.2d at 187.
Defendants submit that painting and placing tires around the concrete foundation satisfies the duty to warn recognized in Sullivan. The position is not well taken. The parking lot in Sullivan was not for a retail business operation, like this Firestone store. There were several concrete obstructions in Sullivan heightening the awareness of parking lot users. The plaintiff in Sullivan was specifically aware of the concrete obstructions.
Rodrigue was not specifically aware of the existence of the obstruction. While his collision occurred in the daytime, he had never previously been to the parking lot and there were no other such cement foundations without light poles attached to heighten his awareness that there might be such an obstruction in his path. He turned around to look for an open parking place. He was looking specifically for cars, not two and one-half to three-foot-high concrete obstructions. Had Rodrigue not *481 backed into the obstructed parking place, he probably would have seen the obstruction; however, with the placement of the service bay doors immediately across from the parking spaces and the sign requesting that patrons not block the bay doors, it is altogether foreseeable that persons would back into the spaces in complying with the request. While the color of the cement foundation in Sullivan was similar to the color of the parking lot itself, and the cement foundation in the case at bar had been painted red, this distinction does not compel us to distinguish Sullivan.
We find liability as did the court in Sullivan under both LSA-C.C. arts. 2317 and 2315. Both Firestone and Marcel occupied positions of legal responsibility under LSA-C.C. art. 2317: Firestone as owner and lessor under a lease agreement which preserved a significant amount of control over the premises,[1] and Marcel as a custodian of the unreasonably dangerous thing. Both are liable under LSA-C.C. art. 2315 for negligently failing to warn of the danger. See Sullivan, 382 So.2d at 187.
In apportioning fault between co-defendants and Rodrigue, the factors articulated in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985), are instructive notwithstanding the distinction that Watson involved apportionment of comparative fault .between tortfeasor and victim, because consideration of the conduct of all actors is necessary to determine varying degrees of fault. See McLaughlin v. Fireman’s Fund Insurance Co., 533 So.2d 340 (La.1988). Watson provides a general method to compare the conduct of the various parties to a tort, with the following factors:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.... [and (6) ] the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
Watson, 469 So.2d at 974.
While Rodrigue failed to see the obstruction, he likewise had no reason to suspect that such an obstruction would exist in the middle of a parking space. The trial court was clearly wrong in determining that the sole and proximate cause of the collision, and plaintiffs subsequent injuries, was the fault of her husband. As in Sullivan, the concrete foundation was unreasonably dangerous. The benefit of its existence was significantly outweighed by the hazard. See Hunt v. City Stores, 387 So.2d 585 (La.1980).
We note that Firestone enjoyed a superi- or position with regard to removal of the obstruction. Firestone was made aware of the damage to the light pole and its resulting removal soon after the 1983 accident. Michael Marcel testified that he had repeated discussions regarding removal of the concrete base. This testimony is unre-futed and credible. Firestone clearly maintained a significant degree of control over the premises and the operation of the dealership. Marcel did, however, remove the light pole after the 1983 accident for safety reasons and could have exercised similar foresight with regard to the concrete base that remained. Moreover, something less drastic than removal, such as adequate warning, would have sufficed. For these reasons, fault is assessed as follows: Ro-drigue, 70%, Firestone, 15%, and Marcel 15%.
LSA-R.S. 9:3221 provides that a lessor may by contract shift the responsibility imposed upon him by LSA-C.C. art. 2695 to the lessee. The indemnification provision in the lease is, as Firestone asserts, consistent with this statute. However, Firestone was made aware of the existence of the obstruction that we have determined to have been unreasonably dangerous, approximately one year prior to the accident in qu'estion without making any effort to alleviate the danger. The indemnification *482 provision is therefore inoperative under the express language of LSA-R.S. 9:3221:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
(Emphasis ours.) See Great American Surplus Lines Insurance v. Bass, 486 So.2d 789, 793 (La.App. 1st Cir.), writ denied, 489 So.2d 245 (La.1986).
Having reversed the trial court’s determination of liability, and with the complete record before us, we will address the issue of damages. See Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
Plaintiff testified that after the collision her ears began to “ring” and she immediately felt pain in her shoulders and neck. The next day she consulted her family physician who diagnosed “cervical strain.” She began to experience numbness in her arms. Two days after the accident she consulted Dr. Wilson Enroch, an orthopedic specialist who prescribed physical therapy. She continued to experience numbness in her arms. She returned several months later and consulted Dr. Enroch’s associate, Dr. Stephen Morris. Thereafter, Dr. Morris rendered plaintiff's treatment, consisting, initially, of medication and physical therapy. On May 20, 1985, she was admitted to St. Anne General Hospital for a cervical myelogram. The results of the myelogram, according to Morris, indicated a “minimal indentation” of the dye column at the C-5, C-6 level. He recommended continued physical therapy. Plaintiff continued to complain of pain and increasing numbness, particularly at night. Although two EMG (electromyogram) tests found no abnormality and the myelogram found minimal pathology, the physical therapy did not improve her condition. An anterior cervical fusion was performed on August 13, 1985. A bone graft was taken from plaintiff’s hip. After surgery plaintiff complained of hip pain continuing until the trial and testified that she no longer does many of the outdoor activities she liked to do, such as boat riding, bicycle riding, and mowing grass. She also complained of the surgical scar to her neck which she described as about three and one-half inches long, which was ugly and irritated her. About nine months after the operation, plaintiff testified that she felt real good.
Dr. Morris estimated plaintiff’s permanent partial disability at seven to ten percent. Dr. Gary Guidry, another orthopedist who saw her, assigned her disability at 15%. The submitted medical expenses to-talled $11,795.57. No other special damages were proven. General damages are fixed at $60,000.00.
Accordingly, we reverse the trial court’s judgment and render judgment in favor of plaintiff. For the reasons stated, however, the judgment dismissing incidental demands of Firestone and Marcel is affirmed. Since Rodrigue and his insurer have settled, plaintiff’s award is subject to a 70% reduction, and Firestone and Marcel are cast jointly and in solido for 15% each of the balance of $21,538.67 ($71,795.57 X 30% = $21,538.67), plus 15% each of all costs.
REVERSED AND RENDERED IN PART; AFFIRMED IN PART.

. See also LSA-C.C. art. 2695.