SHORTESS, Judge.
Evelyn Lea Fruge (plaintiff) was injured in an automobile collision that occurred on the afternoon of September 1, 1984, in the parking lot of a Burger King restaurant located in the 5300 block of Plank Road in Baton Rouge. She entered the parking lot in her Toyota automobile and was struck broadside by a pickup truck, leased by Gulf States Utilities (GSU) and driven by a GSU employee, David Hebert Thornhill. Thorn-hill was backing out of a parking space when the rear bumper and trailer hitch on the truck struck the right front door and fender of plaintiffs automobile.
Plaintiff sued Thornhill and GSU (defendants). At the conclusion of the trial, the jury returned a verdict finding defendants 95% at fault and plaintiff 5% at fault, but finding plaintiffs fault did not “proximately cause” the accident. The jury’s itemized award for damages included, inter alia: past loss of income, $5,625.00; past and future pain and suffering, $18,000.00; past and future mental anguish and emotional distress, $19,000.00; and disability, $21,-000.00. Plaintiff appeals these awards, assigning error as follows:

The general damage award by the jury was inadequate and should be raised to the minimum within the jury’s discretion.

The trial court erred in allowing over objection irrelevant and immaterial testimony regarding the collateral source of employee earned fringe benefit sick leave.

The jury’s verdict for past lost earnings was clearly erroneous.

The latter two assignments of error appear to be alternative arguments and will be addressed as one issue.
PAST LOSS OF INCOME
Plaintiff asserts that due to injuries from the accident she missed 578 hours from her employment as a “security clerk” in the hospital of the Louisiana State Penitentiary at Angola. Plaintiffs supervisor, Capt. Nolan Lachney, testified that plaintiff used annual leave, compensatory leave and sick leave during the period between the September 1984 accident and the January 1988 date of plaintiffs return to work following surgery. Lachney testified that employees were not allowed to deplete the entirety of accrued sick time and that therefore he approved plaintiffs requests to use annual or compensatory leave for medical purposes. Lachney identified copies of plaintiffs leave records totalling 578 hours.[1]
Defendants assert that plaintiff has failed to show that these absences were attributable to her injuries and has failed to show valuation of the expenditure of annual, compensatory and sick leave. Defendants cross-examined Lachney with regard to whether an employee is paid for accumulated leave. Plaintiff objected to the line of questioning on the grounds of *911 relevance, asserting that accrued leave time is a collateral source from which defendants may not derive a reduction of liability. The trial court overruled the objection: “I am not acquainted with any law that says sick leave is compensable. I know some employers will let you accumulate sick leave and when you leave, you get paid for your sick leave. I would go ahead and overrule the objection.”
The trial court’s instructions to the jury following the close of the evidence were, in part, as follows:
In [regard] to that past loss of income, the law provides that if a person uses their annual leave or sick time from their employment because of an accident, then they are to be compensated for use of their annual leave and/or sick time that they have used. You will have to determine whether she has had past loss of income.
The record shows that plaintiff was forced to use annual, compensatory, and sick leave. She was paid for those days missed, but she incurred a diminution of her accrued leave. Defendants may not benefit from this collateral source. Reeves v. Gulf States Utilities Co., 327 So.2d 671, 676 (La.App. 1st Cir.), writs denied, 330 So.2d 309, 311 (1976); Clement v. State, 528 So.2d 176, 184 n. 1 (La.App. 1st Cir.1988). The measure of the value of the leave is plaintiff’s regular rate of pay. See Id.
Lachney testified plaintiff was a good employee who was present for work “except for the times she [had] doctor appointments.” Lachney was plaintiff’s supervisor until 1986, but even thereafter he saw plaintiff on a daily basis at work. After plaintiff returned to work in January of 1988, until the October 1988 trial, she had not missed one day of work. We believe the record as a whole supports the conclusion that plaintiff missed 578 hours from work as a result of this accident and that she should be compensated at the regular hourly wage applicable. The jury erred in not awarding the sum of $8,488.03.
GENERAL DAMAGES
Plaintiff asserts that the jury’s award of general damages is so inadequate as to constitute clear error and an abuse of its discretion, and asks that we raise the award to the minimum within the jury’s discretion. Coco v. Winston, 341 So.2d 332 (La.1976); Reck v. Stevens, 373 So.2d 498 (La.1979).
Plaintiff was 26 years old and recently married (with two stepsons) at the time of the accident (September 1, 1984). She had not had any previous problems with either her neck or her hand. She experienced pain immediately after the accident and on the following morning awoke unable to turn her head. She initially sought medical attention at the emergency room of the Baton Rouge General Hospital, where x-rays were taken of her neck, pain medication was prescribed, and she was advised to consult a specialist if the problem persisted. With respect to her hand injury, plaintiff was told that it was “just a bruise.”
Two days later, September 4, 1984, plaintiff consulted Dr. William F. Hagemann, an orthopedic surgeon about her neck problem. Dr. Hagemann found plaintiff's range of motion to be 50% normal, advised her not to return to work at that time, and prescribed a cervical collar. Three weeks after this visit plaintiff returned to Hagem-ann and complained of pain in her wrist. The bruise that appeared immediately after the accident had disappeared, but plaintiff testified that the pain had increased. Ha-gemann took x-rays of the wrist, which were normal. He splinted plaintiff’s wrist and told her she could return to work the following day, October 10, 1984. On November 8, 1984, Hagemann injected plaintiff’s wrist with cortisone. At this time she still exhibited tenderness in her neck, but no objective symptoms. Hagemann believed that plaintiff’s neck injury was muscular and that the wrist injury was a sprain. He prescribed traction with a device to be used at home, as well as certain exercises for her neck. Hagemann last saw plaintiff on December 3, 1984. Her wrist had improved from the cortisone. *912 She still complained of some neck pain. He told her to continue the exercises and return to see him if the symptoms did not resolve.
Plaintiff did not return to Dr. Hagem-ann. She consulted Dr. Kenneth A. Adatto approximately three months later, in March of 1985. Upon examination Adatto found muscle spasm over the cervical spine and tenderness in the area of the hamate bone of her wrist. After this examination, Adat-to believed plaintiff suffered from “chronic cervical syndrome which just needed further conservative care” and a possible fracture of a small bone in her wrist. Plaintiff did not see Dr. Adatto again until April 10, 1987.
Plaintiff consulted Dr. Henry LaRocca on June 19,1985, with complaints of pain in her right hand on a daily basis since the accident, exacerbated by activity, and tenderness at C-7 with a range of motion approximately 50% normal. LaRocca hospitalized plaintiff for testing of both complaints on July 10, 1985. A CT scan was normal, but a discogram indicated disc degeneration at C5-6. LaRocca did not believe the disc itself to be the source of the pain, however, because the injection did not produce a “familiar pain response.” La-Rocca and a hand specialist, Dr. Gregory Kinnett, performed the “Allen’s” test on plaintiff’s right hand and determined that the blood flow from the ulnar artery, one of the two major sources of blood supply to the hand,[2] was deficient. An arteriogram[3] performed on August 11, 1985, confirmed the Allen’s test. LaRocca diagnosed ulnar artery thrombosis, caused from clotting following the initial blow to plaintiff’s wrist.
Plaintiff was hospitalized for testing July 10 through July 14, 1985, and again on August 11, 1985. During the latter hospitalization both the arteriogram discussed above and a facet block injection, to determine whether the facet joints at C5-6 rather than the disc itself were the major source of pain, were performed. Dr. Charles Aprill, a radiologist, performed the facet blocking[4] on August 12, 1985. Plaintiff reacted with such severe anxiety and hysteria (despite the administering of intravenous Valium) that Aprill could not determine with accuracy whether familiar pain was produced.[5] LaRocca testified, however, that a steroid was also injected into the facet joint which later alleviated much of the neck pain, indicating that the facet joints were the major source of pain.
Plaintiff remained hospitalized from August 11 through August 23, 1985. On August 20, LaRocca and Kinnett performed a surgical procedure to release the ulnar artery from the scar tissue which had caused the thrombosis. The artery itself had collapsed, however, and LaRocca testified that the removal of scar tissue from the surface of the artery would not necessarily recanalize (open the artery again). Plaintiff returned to LaRocca on September 23, October 21, and December 9, 1985, and February 3, 1986. Plaintiff complained of sensitivity in the surgical scar but was not experiencing pain in her hand as before the surgery. In addition, on December 9, 1985, Dr. Aprill had performed another facet block, and on the February 3, 1986, visit plaintiff’s neck pain had decreased.
Plaintiff testified she enjoyed relief from the original pain in her hand but some time later began experiencing a tingling sensation. LaRocca examined plaintiff again on the morning of his deposition, September 9, 1988, finding restricted flexion and hypersensitivity in the little finger consistent *913 with a recurrence of scarring around the ulnar nerve. He performed the Allen’s test again and determined the ulnar artery to be permanently fibrotic, providing no blood supply to plaintiffs hand.
LaRocca testified that the American Medical Association tables prescribing percentages of anatomical disability do not adequately address plaintiffs particular problem because they categorize only loss of range of motion. He testified that based upon the loss of flexion, plaintiff has a 6% impairment of the upper limb, but that scar sensitivity, hypersensitivity, or shock sensation are not factored into this assessment.
Plaintiff did not seek further medical assistance until April 10, 1987, when she returned to see Dr. Adatto. She testified that she believed neck surgery was her only alternative and that she was not prepared to submit to such procedure at that time. During the fourteen-month interval plaintiff used the physical therapy facilities at her place of employment on her lunch hour. Plaintiff testified that the pain in her neck grew increasingly worse.
Dr. Adatto testified that his examination on April 10, 1987, revealed a worsening of muscle spasm and restriction of motion since March 1985. Adatto reviewed the tests performed by Aprill and concluded the facet joints were most likely causing the problem. He ordered a CT scan and an MRI. Adatto testified that a facet joint problem usually resolves itself, but that a small percentage of people require fusion.
Plaintiff returned to Adatto on July 6, 1987. Adatto had another facet block performed, which increased plaintiffs pain. Suspecting that the disc was becoming the primary pain source, Adatto ordered another diseogram, which was performed by Ap-rill on November 4, 1987. The results of the diseogram indicated that the disc itself was degenerating. Adatto recommended fusion at C5-6. On November 6, 1987, plaintiff underwent anterior cervical fusion at C5-6. The bone graft used was taken from plaintiffs hip. Plaintiff saw Adatto November 19 and December 15, 1987, and January 7, 1988. Adatto released her to return to work on January 18, 1988. At this time, the headaches which had been occurring since the accident had subsided. Plaintiff testified that she had actually experienced more pain following the surgery from the donor site (the hip) than from her neck and felt approximately 80% better than prior to surgery. Adatto estimated a 15-20% anatomical disability of the cervical spine following the fusion. Adatto prescribed permanent restrictions on stooping, moving the head up and down, and lifting objects over 25 to 50 pounds.
The jury’s award itemized general damages in three categories: past and future pain and suffering, past and future mental anguish, and disability. Our review of the award is as to each item separately. Chaney v. Our Lady of Fatima Catholic Church, 391 So.2d 501, 504 (La.App. 3d Cir.1980). The sufficiency or insufficiency of an award turns upon the facts and circumstances peculiar to the particular case and the inquiry is whether the award for the particular injuries and their effect upon the person injured is a clear abuse of the much discretion vested in the finder of fact. Burton v. Foret, 484 So.2d 753, 758 (La.App. 1st Cir.), affirmed, 498 So.2d 706 (1986) citing Reck v. Stevens, 373 So.2d 498. An examination of previous awards for similar injuries is appropriate only to the extent of determining whether the award at bar is greatly disproportionate. Id.
In Rodrigue v. Firestone Tire & Rubber Co., 540 So.2d 477 (La.App. 1st Cir.), writs denied, 546 So.2d 179, 180 (1989), plaintiff was injured September 24, 1984, and was treated conservatively until August 13, 1985, at which time anterior cervical fusion was performed at C5-6. One doctor estimated plaintiff’s disability at 7 to 10%, another estimated it at 15%. Plaintiff complained of continuing pain in her hip (the donor site) but testified that her neck “felt real good.” Rodrigue, 540 So.2d at 482. Our de novo, en globo award was $60,-000.00. The plaintiff in Rodrigue underwent one myelogram and two EMG’s, as opposed to the more intense diagnostic testing at bar. Additionally, plaintiff here *914 in suffered neck pain for over three years until the fusion, as opposed to one year, and has suffered and continues to suffer from the wrist disability.
In Morris v. State, DOTD, 461 So.2d 606 (La.App. 1st Cir.1984), a 27-year old female plaintiff was injured on July 18, 1982. A myelogram and a nerve conduction study revealed cervical nerve root irritation at C6-7. An anterior cervical fusion was performed. The trial court awarded plaintiff $34,232.07 en globo general and special damages. Chief Judge Covington reversed, holding $125,000.00 was the minimum that could be awarded under the facts (which were not remarkable insofar as excessive pain is concerned). See Morris, 461 So.2d at 609 (and cases cited therein).
In Rickerson v. Fireman’s Fund, 543 So.2d 519 (La.App. 1st Cir.1989), plaintiff had two prior cervical injuries which were asymptomatic or had resolved by the time of the accident (one of the prior injuries was in 1982, the other in 1984 the accident therein at issue occurred in 1985). Plaintiff was treated conservatively for about a month, then was hospitalized for eight days after the anterior cervical fusion. She was released to return to work after six months post-surgery. The jury awarded $35,000.00 general damages as follows: physical pain and suffering, $17,000.00; mental pain and suffering, $5,000.00; and disability $13,-000.00. The trial court awarded $125,-000.00 in a judgment notwithstanding the verdict. The appellate court (LeBlanc, J.) agreed that the $35,000.00 was error:
We find that the facts regarding plaintiff’s injury and subsequent treatment point so strongly and overwhelmingly in favor of a higher general damages award that reasonable men could not reach a different conclusion.
Rickerson, 543 So.2d at 522. The appellate court noted that it was not clear whether the trial court rendered the JNOV based on Coco v. Winston, 341 So.2d 332 (La.1976), or de novo review. Concluding the latter to be appropriate, the court rendered its own award under de novo review, totalling $125,000.00.
In Aucoin v. Hartford, 499 So.2d 1042 (La.App. 3d Cir.1986), a $150,000.00 lump sum award including $16,000.00 in medicals and lost wages was given for a 25% physical impairment of the cervical spine.
In Wilson v. Wal-Mart, 448 So.2d 829 (La.App. 2d Cir.1984), a myelogram could not be performed because plaintiff was allergic to the dye. A CT scan revealed a ruptured disc at L5. Three epidural nerve blocks were performed. A 20% disability was assigned. The sum of $100,000.00 in general damages was awarded.
The Coco and Reck standard of review is applicable here. See Sorrells v. Knippers & Assoc., 544 So.2d 556, 564 (La.App. 1st Cir.1989). Accordingly, we may only raise the general damage award to the lowest amount a reasonable fact finder could have given. Id. The award for past and future pain and suffering of $18,000.00 was surprisingly low, and a clear abuse of the jury’s much discretion. We have, in some detail, outlined the long and very painful course plaintiff's treatment took before she obtained significant relief from her wrist and neck complaints. She has residual disability in both areas, and permanent restrictions in her activities. Fortunately, her prognosis is relatively good now, and plaintiff returned to full-time work shortly after her last surgery (she also worked between the accident and her surgery but with many problems). The lowest amount a reasonable fact finder could award for her past and future pain and suffering is fixed at $100,000.00. We also find that while on the very low side, we cannot say that the awards for mental anguish and emotional distress of $19,-000.00 and disability of $21,000.00 was an abuse of the jury’s great discretion.
For the reasons stated, the judgment of the trial court is amended, as follows:
Past loss of income $ 8,488.03
Past and future pain and suffering " 100,000.00
Past and future mental anguish and emotional distress 19,000.00
Disability 21,000.00
$148,488.03
*915 All costs are taxed to defendants.
AFFIRMED AS AMENDED.

. Plaintiff’s monthly salary factored into an hourly rate at $9.80 for 1984 and a portion of 1985, and $10.33 thereafter. Plaintiff computes the total of hours multiplied by the appropriate hourly rate as totalling $8,488.03.

. The ulnar and radial arteries are the two sources of blood supply to the hand.

. An arteriogram is performed by injecting dye into the major artery of the arm and then x-ray-ing the extremity to determine blood flow. The arteriogram was performed three times before an accurate reading was obtained. Plaintiff testified the procedure was very painful.

. The facet block entails injection into the facet joint (zygapophysial joints that occur in pairs posterior to the intervertebral disc), a determination if familiar pain is reproduced by the injection, and then injection of an anesthetic to determine if the pain is eliminated.

.Plaintiff testified that the discogram performed a month earlier had been done by an inexperienced physician and had caused her significant pain, and that, thereafter, she experienced great distress prior to procedures using large needles.