673 So.2d 676 (1996)
Kathleen SPANGLER and John Spangler
v.
WAL-MART STORES, INC., et al.
No. 95 CA 2044.
Court of Appeal of Louisiana, First Circuit.
May 10, 1996.
*678 Charest Thibaut, III, John S. Thibaut, Jr., Baton Rouge, and Al LeBlanc, Maringouin, for Plaintiffs-Appellants Kathleen Spangler and John Spangler.
John Swift and Kyle L. Gideon, Lafayette, for Defendants-Appellees Wal-Mart Stores, Inc., National Union Fire Ins. Co. of Pittsburgh, Pennsylvania.
Before LeBLANC, WHIPPLE and FOGG, JJ.
FOGG, Judge.
In this personal injury action the plaintiffs, Kathleen and John Spangler, appeal a judgment in their favor, raising solely the issue of quantum. We amend, and affirm as amended.
On June 14, 1991, Kathleen Spangler and her husband, John Spangler, went to Wal-Mart in Zachary, Louisiana. After choosing their purchases, but prior to paying for them, both Spanglers decided to use the restroom facilities. After Mr. Spangler was finished using the restroom he waited in the hall for his wife. While waiting, he noticed dark stains on the floor leading from the women's restroom. Shortly thereafter he heard his wife call his name and he eased the door to the women's restroom open and saw his wife on the floor. As he assisted his wife, he noticed a red substance on the floor and a crushed cup underneath his wife. Mrs. Spangler stated that after she finished using the restroom she was walking toward the sink when she slipped, fell on her back and hit her head on the bathroom stall.
The Spanglers did not notify anyone at Wal-Mart about the fall before they left the store. However, once they returned home Mrs. Spangler noticed that she had lost a ring so she called the store and informed Mr. Sones, the assistant manager, of the slip and fall and asked him to look for her ring. Mr. Sones then took pictures of the floor and filled out an accident report. He also asked several female employees to check out the restroom for him. None of the Wal-Mart employees reported any red substance on the floor. However, one employee did testify that she noticed that the floor did look wet when she checked it. Mr. Harry Scott, Jr., a stock clerk at the time of the accident, testified that on the day of the accident Mr. Sones told him to clean up a spill in the women's restroom and, although he could not remember the color, he did clean up a liquid spill.
On the night of the accident, due to the pain his wife was experiencing, Mr. Spangler took her to Lane Memorial Hospital where she was treated and told to see her own physician. Her family doctor treated her for a short while then recommended that she see an orthopedic specialist. Mrs. Spangler saw Dr. Herbert Plauche who diagnosed a fractured tail bone. She then saw Dr. John Watermeier, another orthopedist.
Dr. Watermeier ordered an MRI, CAT Scan and thermogram. He also ordered *679 physical therapy and medication to help her with the pain. When those did not decrease the pain, he ordered a myelogram and discogram. As a result of the tests, he performed an anterior cervical fusion. Even after the operation, Mrs. Spangler continued to complain of pain. After further tests, Dr. Watermeier performed a bilateral sacroiliac joint fusion. Mrs. Spangler still complained of pain in her neck and further tests were ordered. Dr. Watermeier then performed a posterior cervical fusion. Still Mrs. Spangler complained of pain and more tests were ordered, after which Dr. Watermeier performed a lumbar fusion.
Mrs. Spangler then sought the treatment of Dr. Ward, a rehabilitation and pain management doctor, and Dr. Nicholson, an orthopedic surgeon. Dr. Nicholson determined that the previous lumbar and posterior cervical fusions had not been successful and he revised the lumbar fusion in her lower back at which time he inserted a battery operated internal bone stimulator to aid in the healing process.
Mrs. Spangler filed suit for damages; therein, Mr. Spangler sought to recover for loss of consortium. At trial in this matter, the jury awarded Mrs. Spangler $64,000 for physical pain and suffering; $25,000 for past and future lost earnings and $186,000 for past medical expenses.[1] The plaintiffs appeal the amounts awarded by the jury to Mrs. Spangler for her injuries and the failure to award loss of consortium to Mr. Spangler.
In their first assignment of error, the plaintiffs assert that the trial court committed manifest error by refusing to exclude testimony from defendants' expert that Mrs. Spangler's doctors performed unnecessary or inappropriate treatment.
Plaintiffs filed a Motion in Limine to prohibit Wal-Mart from introducing evidence that the surgeries Mrs. Spangler underwent were unnecessary or inappropriate. In their Memorandum in Opposition to Plaintiffs' Motion in Limine, the defendants acknowledged that the law cited by plaintiffs was correct. However, they argued that they had the right to put on evidence of bad faith on the part of Mrs. Spangler. That motion was denied and Dr. Johnston, an orthopedist hired by Wal-Mart, was allowed to testify that in his opinion the surgeries were inappropriate and unnecessary. As a basis for his opinion, Dr. Johnston reviewed Mrs. Spangler's medical records and examined her on two occasions. Dr. Johnston testified extensively about the surgeries Mrs. Spangler underwent prior to the accident at issue. Dr. Johnston opined that Mrs. Spangler's pain was a product of "secondary gain," that is pain exhibited by an injured person in order to reap some benefit. The plaintiffs argue that this testimony was very prejudicial and affected the jury's award of damages.
It is well established that a tortfeasor is liable for unnecessary treatment or over treatment unless the tortfeasor can show that the plaintiff underwent the treatment in bad faith. Sutton v. Lambert, 94-2301 (La.App. 1 Cir. 6/23/95), 657 So.2d 697, writ denied, 95-1859 (La. 11/3/95), 661 So.2d 1384; Use v. Use, as corrected on limited grant of rehearing, 94-0972 (La.App. 1 Cir. 6/6/95), 654 So.2d 1355, writs denied, 95-1834 and 95-1879 (La. 11/13/95), 662 So.2d 468. The reason for the rule is that as between the victim and the tortfeasor the basic cause for the excessive expense of treatment is attributable to the party whose fault caused the injury rather than the victim. Tyler v. Richardson, 476 So.2d 899 (La.App. 2 Cir.), writ denied, 478 So.2d 907 (La.1985); Hillebrandt v. Holsum Bakeries, 267 So.2d 608 (La.App. 4 Cir.1972).
In the instant case, the jury awarded the full amount of medical expenses, thereby distinguishing this case from those cited by the plaintiffs. It is clear that if the jury had determined that Mrs. Spangler acted in bad faith in undergoing medical treatment, they would not have awarded the full amount of medical expenses. Plaintiffs cite Lasha v. Olin Corp., 625 So.2d 1002 (La.1993), for the proposition that a tortfeasor is liable not only for the injuries which he causes directly to *680 the tort victim, but also for additional suffering caused by inappropriate medical treatment. Although true, that legal precept is inapplicable to the instant case because, by awarding the full amount of medical expenses, the jury did not find the medical treatment inappropriate.
The plaintiffs further assert that the jury abused its discretion by failing to award damages to adequately compensate Mrs. Spangler for her injuries. After the accident on June 14, 1991, Mrs. Spangler underwent five surgeries. Four were performed by Dr. Watermeier and include an anterior cervical fusion, a bilateral sacroiliac joint fusion, a posterior cervical fusion and a lumbar fusion. The fifth surgery was performed by Dr. Nicholson, who revised the lumbar fusion in her lower back and inserted a battery operated internal bone stimulator.
The correct standard for appellate review of a damage award is clear abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337 (La.1993). In reviewing a damage award, we must review the evidence in the light which most favorably supports the judgment and make an articulated analysis of the facts and circumstances peculiar to the plaintiff's case. If that analysis discloses an abuse of discretion, i.e., that the award is below that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances, we may raise the award only to the lowest amount reasonably within the trier of fact's discretion. Theriot, 625 So.2d at 1340; Domangue v. Mr. Gatti's, 93-2392 (La.App. 1 Cir. 6/23/95), 657 So.2d 689.
The sufficiency or insufficiency of an award turns upon the facts and circumstances peculiar to that particular case; our inquiry is whether the award for those injuries and their effect upon those claiming to have been damaged is a clear abuse of the much discretion vested in the finder of fact. Higley v. Kramer, 581 So.2d 273 (La.App. 1 Cir.), writ denied, 583 So.2d 483 (La.1991); Fruge v. Thornhill, 560 So.2d 909 (La.App. 1 Cir.), writ denied, 567 So.2d 618 (La.1990). Under the evidence presented, including the number and nature of the surgeries performed, we find that the jury's award of $64,000 for physical pain and suffering was an abuse of discretion and that an award of $250,000 in general damages is the lowest general damage award reasonably within the jury's discretion for the injuries sustained by Mrs. Spangler.
The plaintiffs also assert that it was error for the jury to award Mrs. Spangler only $25,000 for loss of earnings both past and future. It is the plaintiff's burden to prove past lost earnings and the length of time missed from work due to the accident. Daigle v. U.S. Fidelity and Guar. Ins. Co., 94-0304 (La.App. 1 Cir. 5/5/95), 655 So.2d 431. Past lost earnings are susceptible of mathematical calculation from proof offered at trial, and an award for this element of damages is not subject to the much discretion rule. Ammons v. St. Paul Fire & Marine Insurance Co., 525 So.2d 60 (La.App. 3 Cir.), writ denied, 525 So.2d 1045 (La.1988). Future earning capacity is not necessarily determined by actual loss; damages may be assessed for what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. Daigle, 655 So.2d at 442. Awards for lost future income are inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty. The courts must exercise sound judicial discretion in determining these awards and render awards which are consistent with the record and do not work a hardship upon either party. Haydel v. Hercules Transport, 94-1246 (La.App. 1 Cir. 4/7/95), 654 So.2d 418, writ denied, 95-1172 (La. 6/23/95), 656 So.2d 1019. Factors to be considered in determining a proper award for lost future income are the plaintiff's physical condition before the injury, the plaintiff's past work history and consistency thereof, the amount the plaintiff probably would have earned absent the injury complained of, and the probability that the plaintiff would have continued to earn wages over the remainder of his working life. Haydel, 654 So.2d at 435.
In the five years prior to the accident, Mrs. Spangler's work history was sporadic at best. In 1987 her total earnings were *681 $247.92; in 1988 they were $4,458.91; in 1989 they were $1,356.04; in 1990 no earnings were reported and in 1991, the year of the accident, they were $2,881.06. Shortly before the accident Mrs. Spangler was working as a prison guard; however, she could not maintain that employment because she failed the written test. Furthermore, the record clearly indicates that prior to the accident in the instant case, Mrs. Spangler suffered other medical problems. In 1986 she had a pelvic cyst; in 1988 she had her gall bladder removed; in 1990 she had sinus surgery; also in 1990 she had two cystoscopies; and again in 1990 she had another cyst excised from her pelvis. In the month preceding the accident, Mrs. Spangler visited the emergency room for headaches on at least four occasions and doctor's offices at least three times.
According to the testimony of Mrs. Spangler's economist, if the earnings reported by Mrs. Spangler were an indication of what her lost wages would have been, the figure would be approximately $7,000 and her future earnings, discounted to present value, would be around $20,000. Additionally, there is no proof in the record that Mrs. Spangler could not earn any salary in the future. Certainly her options are limited; however, that does not in and of itself prove that she would have had no earnings for the remainder of her working years. We find no error in the jury's award of $25,000 for past and future lost wages.
The plaintiffs also argue that it was error for the jury not to compensate Mrs. Spangler for future medical bills. However, in order to recover for future medical expenses, they must be established with some degree of certainty, and awards will not be made in the absence of medical testimony as to the requirement for such expenses and their probable cost. James v. Webb, 94-162 (La.App. 3 Cir. 10/5/94), 643 So.2d 424, writ denied, 94-2670 (La. 12/16/94), 648 So.2d 396. The only medical testimony, with regard to future medical expenses for injuries caused by the accident, indicates that Mrs. Spangler would probably require pain medication in the future and that she may require surgery if the pain became unbearable for the unsuccessful neck fusion. Although Dr. Nicholson did testify that Mrs. Spangler would require surgery to remove the internal bone stimulator, he did not provide the cost of the operation. We find that Dr. Nicholson's testimony does not establish that further surgery will be necessary and inevitable for Mrs. Spangler and he did not provide a cost for the removal of the internal bone stimulator. Accordingly, the jury was not manifestly erroneous for not awarding future medical expenses to Mrs. Spangler.
The plaintiffs' final assignment of error asserts that the jury abused its discretion in failing to award Mr. Spangler any damages for loss of consortium. Loss of consortium includes such pecuniary elements as loss of services and such non-pecuniary components as love, companionship, affection, society, sexual relations, comfort, and solace. Daigle v. Legendre, 619 So.2d 836 (La.App. 1 Cir.), writ denied, 625 So.2d 1040 (La.1993). There is no evidence in the instant case that Mr. Spangler had a claim for loss of service, that is, for any expenses incurred by him or the family for the loss of services previously performed by Mrs. Spangler. The Spanglers did not hire someone to provide the household services previously performed by Mrs. Spangler. Although Mr. Spangler makes a claim for right of financial support, as discussed previously, Mrs. Spangler's income prior to the accident was sporadic and minimal. Accordingly, our inquiry will be limited to the non-pecuniary components. Mr. Spangler testified that he still loves his wife, that since the accident their social life has changed drastically, their sexual relationship has suffered, and he and his stepson, Toby, must now undertake most of the household chores. We are mindful, however, that Mrs. Spangler suffered numerous medical problems before this accident. Based on the number of times she went to the emergency room or a doctor's office the month before the accident and the number of surgeries she underwent in the four years prior to the accident, it is clear that prior medical problems also had an effect on the marriage.
Considering the evidence as a whole, we conclude that the jury's failure to award any loss of consortium damages was an abuse of discretion. Therefore, we will amend the *682 judgment of the trial court to award Mr. Spangler $20,000 in damages for loss of consortium and society.
Accordingly, we amend the judgment of the trial court to award Mrs. Spangler $250,000 in general damages and to award Mr. Spangler $20,000 for loss of consortium. In all other aspects, we affirm the judgment of the trial court. Costs of this appeal are assessed against appellees.
AMENDED, AND AFFIRMED AS AMENDED.
LeBlanc, J., affirms in part and dissents in part and assigns reasons.
LeBLANC, Judge, dissenting in part.
I respectfully dissent from that portion of the majority opinion increasing the award of general damages to Mrs. Spangler from $64,000.00 to $250,000.00.
I agree that the award of $64,000.00 in general damages was so low as to constitute an abuse of the jury's discretion. However, having found such an abuse, this Court may only raise the award to the lowest amount reasonably within the jury's discretion. I disagree with the majority's conclusion that $250,000.00 was the lowest amount within the jury's discretion. While an award of $250,000.00 may have been within the jury's discretion, it certainly was not the lowest reasonable amount with could have been awarded under the facts of this case.
NOTES
[1] Mr. Spangler's employer, Cajun Contractors, Inc., intervened in the suit to collect amounts paid on behalf of Mrs. Spangler for medical expenses. Cajun and Wal-Mart reached an agreement and Cajun dismissed its appeal in this matter.