J^FITZSIMMONS, J.
Winn-Dixie Louisiana, Inc., (Winn-Dix-ie) appeals the trial court judgment awarding John S. D’Antoni the sum of $20,000.00 in general damages and $23,029.70 in special damages. Winn-Dixie assigns as error the trial court’s determination of negligence on the part of Winn-Dixie and the court’s award of damages to plaintiff for lost wages. We amend the judgment in part.
FACTS
On May 29, 1994, a few minutes after 7:00 a.m., Mr. D’Antoni fell in a Winn-Dixie store. Mr. D’Antoni was the first customer in the store. He arrived just before the store opened. It is undisputed that, following Mr. D’Antoni’s fall, a small piece of tomato was observed on the floor. Mr. D’Antoni claimed that he did not see the tomato until after the fall.
Several Winn-Dixie employees testified. Mr. James Smith, one of the managers of the Winn-Dixie, stated that the incident transpired at 7:03 a.m. He conceded that he saw the tomato piece on the floor after the incident; however, he testified that two employees had been working in the area where the fall occurred for forty-five minutes prior to the incident. They reported that they never saw anything on the floor. Mr. Smith’s personal inspection earlier in the morning confirmed that the store had been swept and cleared the previous night. When he walked the entire store to conduct a morning inspection pri- or to opening, per store policy, he had not seen the piece of tomato. Additionally, Mr. Smith testified that the aisle in contention had been zone-checked at 7:00 a.m. by another employee, Mr. Leon Lewis.
*1095 The meat department manager, Mr. Mike Clement, was in the area where Mr. D’Antoni fell when the incident occurred. He confirmed that at 7:00 a.m., he had instructed Mr. Lewis to conduct the zone inspection of the aisle in which Mr. D’An-toni fell. He testified that he saw the tomato wedge after the fall, but he did not know how it got there.
Mr. Leon Lewis, the employee who conducted the 7:00 a.m. zone check immediately prior to the fall, also testified. Mr. Lewis stated that he saw Mr. D’Antoni fall after he had noted his completed inspection on the store log sheet. He did not see a piece of tomato until after the fall.
Finally, Ms. Judy McManus, the only other customer in the store at the time of the fall, stated that she entered the Winn-Dixie after Mr. D’Antoni. She denied having possessed any tomatoes at that time. Ms. McManus testified that the floor area where she walked had been 13spotless that morning. She told the manager on the day of the incident that she thought Mr. D’Antoni had faked his fall.
LAW
Following a bench trial, the court found that the tomato wedge created an unreasonable and foreseeable risk. It declared that Winn-Dixie failed to exercise reasonable care because it should have discovered the tomato piece either the night before, or prior to, its opening on the morning of the accident. Thus, Winn-Dixie was deemed to have had constructive notice of its existence on the floor.
Under La. R.S. 9:2800.6(B)(2), as revised in 1990, the claimant is required to prove that the merchant created the condition that caused the damage, or had actual or constructive notice. To meet the burden of constructive notice, the claimant must show that “the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.” La. R.S.9:2800.6(C)(1); See White v. Wal-Mart Stores, Inc., 97-0393, p. 7 (La.9/9/97), 699 So.2d 1081, 1086. “The statute does not allow for the inference of constructive notice absent some showing of [a] temporal element.” White, 97-0393, p. 4, 699 So.2d at 1084. “A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice ....” Id.
The trial judge dismissed the notion that Mr. D’Antoni had planted the tomato piece on the floor. She found that Winn-Dixie failed to exercise reasonable care to remove the tomato piece, and that it had been there since the store closed on the previous night.
When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard of review imparts deference to the trier of fact’s credibility determinations. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882-883 (La.1993). Based on the record, we cannot say that the trial court committed manifest error in its determination that the tomato piece had remained in the aisle since the store had closed on the previous night, in spite of the routine post-closing cleaning and several inspections. Alternatively, if a Winn-Dixie employee on the night clean-up shift had caused the premise hazard, Winn-Dixie would still be deemed to have had constructive notice |4when it failed to detect the tomato during several following inspections. La. R.S. 9:2800.6(B)(2). See and compare, Lopez v. Wal-Mart Stores, Inc., 94-2059, pp. 7-8 (La.App. 4th Cir.8/13/97), 700 So.2d 215, 217, writ denied, 97-2522 (La.12/19/97), 706 So.2d 457.
*1096 Based on the record, we cannot state that the trial court was manifestly erroneous. Only; Winn-Dixie employees had access to the store during the hours between the time the store closed and the time it opened the next morning. Thus, the temporal requirement of an extended presence of the hazardous object on the floor was demonstrated in accordance with the Louisiana Supreme Court’s interpretation of La. R.S. 9:2800.6 in White v. Wal-Mart Stores, Inc., 97-0393, p. 4, 699 So.2d at 1084. The trial court finding of liability by Winn-Dixie to Mr. D’Antonio is, therefore, affirmed.
LOST WAGES
Winn-Dixie argues that the trial court erred in awarding damages to Mr. D’Antoni for past lost wages. Mr. D’Anto-ni was a laborer by trade. He presented into evidence tax returns reflecting his income for the two-year periods surrounding the accident. His 1992 and 1993 income tax returns indicated that Mr. D’An-toni had earned wages in the sums of $16,355.00 and $20,121.00, respectively. In 1994, up until the time of his fall, his wages amounted to $6,549.82. Mr. D’Antoni did not work from May, 1994 until May 1995.[1] Commencing in May of 1995, Mr. D’Antoni earned the sum of $16,579.00 from May through December, 1995. In 1996, he received wages of $21,572.82. The trial court awarded Mr. D’Antoni past lost wages of $17,113.18. This sum approximates the average of Mr. D’Antoni’s annual wages based on his earnings in 1992, 1993 and 1994[2].
An award for past lost wages is amenable to mathematical computation based upon evidentiary proof presented at trial. It is, therefore, not subject to the much discretion rule. Ammons v. St. Paul Fire & Marine Insurance Company, 525 So.2d 60, 65 (La.App. 3rd Cir.), unit denied, 525 So.2d 1045 (La.1988). The plaintiff bears the burden of proving lost earnings, as well as the duration of time missed from work due to the accident. Daigle v. United States Fidelity and Guaranty Insurance Company, 93-0304, p. 15 (La.App. 1st Cir.5/5/95); 655 So.2d 431, 441. Past lost wages must be presented with an adequate basis from which to reasonably establish a particular monetary sum. Span-gler v. WaUMart Stores, Inc., 95-2044, | Kp. 6 (La.App. 1st Cir.5/10/96), 673 So.2d 676, 680, units denied, 96-1407, 96-1450 (La.9/27/96), 679 So.2d 1353.
Mr. D’Antoni fell in May, 1994; however, he did not seek any medical treatment until October, 1994 — four and one-half months later. Nor did Mr. D’Antoni attempt to return to any employment during the interim period prior to seeking medical attention. His failure to present any objective evidence of his inability to perform any type of work for compensation for the five-month period prior to being medically diagnosed[3], falls short of Mr. D’Antoni’s burden to show that he could not have earned any wages whatsoever for the five-month period between May, 1994 and October, 1994. To permit a party to recover damages for lost wages when there is no independent support of plaintiffs claim is highly speculative, and we do not find it appropriate in this case. McDonough v. Royal Sonesta, Inc., 626 So.2d 438, 440 (La.App. 4th Cir.1993).
Using as a basis for calculation the average of Mr. D’Antoni’s tax returns for the twenty-nine month period immediately pri- or to his hiatus from work, the computed time period for past lost wages should exclude the months between the end of May, 1994 and October, 13, 1994. Accord *1097 ingly, the award should reflect the seven-month period[4] of time that he demonstrated an adequate basis for a definable monetary sum. We, therefore, reduce the award granted to Mr. D’Antoni for past lost wages to $10,385.54[5]. Costs affiliated with this appeal are to be borne by Winn-Dixie Louisiana, Inc.
AMENDED IN PART, AND AS AMENDED, AFFIRMED.

.Mr. D’Antoni was treated by Dr. Stuart Phillips on six occasions between ’ October, 13, 1994 and May, 1995. On May 1, 1995, Dr. Phillips released the patient to return to light work.

. Our computation results in an average annual income of $17,803.68.

. Dr. Phillips diagnosed preexisting arthritis, aggravated by trauma with a superimposed cervical disc.

. The six and one-half month time span between October 13, 1994 and May 1, 1995 is rounded to seven months.

. Mr. D’Antoni earned a total sum of $43,-025.82 during the two-year and five months time period prior to his fall. We multiply the average monthly earnings of $1,483.65 by seven months to obtain past lost wages in the sum of $10,385.54.